UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

FILED

IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

M. REGINA THOMAS,
CLERK

BY: _____
DEPUTY CLERK

| | | |
|---|---|---|
| IN RE | § | CHAPTER 7 |
| | § | |
| GLENN FAVRE, PRO SE | § | CASE NO 08-85264-MHM |
| | § | |
| DEBTOR | § | |
| | § | |
| GLENN FAVRE, PRO SE | § | |
| | § | |
| CLAIMANT | § | |
| | § | |
| V. | § | ADVERSARIAL PROCEEDING |
| | § | |
| SUNTRUST BANK HOLDINGS,INC | § | 09-AP-09069 |
| GOLDMAN SACHS, INC | § | |
| FIDELITY NATIONAL TITLE | § | |
| | § | |
| RAY MARTIN | § | 09-AP-09070 |
| | § | |
| JOHN MACKLIN AND THE MACKLIN | § | 09-AP-09071 |
| FAMILY TRUST | § | |
| | § | |
| ERIC MILLER | § | 09-AP-09072 |
| | § | |
| GEORGE LEE LESSESNEE | § | 09-AP-09073 |
| | § | |
| KENNETH KRELL | § | 09-AP-09074 |
| | § | |
| OLD REPUBLIC, INC | § | 09-AP-09075 |
| SUNTRUST MORTGAGE, INC | § | |
| | § | |
| WACHOVIA BANK NA et al. | § | |
| QUINCY SAMPSON | § | |
| INDIVIDUALLY AND WHOLLY | § | |
| NANCY YAO | § | |
| INDIVIDUALLY AND WHOLLY | § | |
| | § | 09-AP--09077 |
| INNOVATIVIE MAERCHANT SERVICES, | § | |
| HEATHER JOHNSTON | § | |
| INDIVIDUALLY AND WHOLLY | § | |
| DEFENDANT | § | |

**DEBTORS AMENDED MOTION TO RE-OPEN THE CHAPTER 7**

**BANKRUPTCY CASE 08-BK-85264-MHM DISCHARGED APRIL 7, 2009**

**UNDER SECTON 727, IN RESPONSE TO AN ORDER DENINING THE**

**DEBTORS MOTION TO APPEAL THE INDIVIDUAL PERSONAL CHAPTER 7**

1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

COMES NOW THE DEBTOR GLENN R FAVRE, (here in referred to as the "DEBTOR" or "FAVRE"), and requests that the Honorable Judge Margaret Murphy and that of this Honorable Court to allow the Chapter 7 Bankruptcy case to be re-opened to allow the appeal of the Chapter 7 under section 158 of title 28, Part VIII of "Fed. R. Bankr.P.", in addition to allow this Honorable Court to Rule on the Core Adversarial Case before this court under 28 U.S.C. § 157(b)(1).

The request comes before this Honorable Court from the recently discovered facts dealing with the non-disclosure of under Fed. R. Bank Rule 2014, specifically dealing with movant 26, Monica Gilroy ESQ.[1] because, Favre always stated that his intention was to have his creditors paid and request Mr. Gregory Hays (here in referred to as the "Mr. Hays" or "Trustee") to not allow the debt to be discharged.

Favre insisted in the recovery of the $225,000.00 in litigation due to Top to Bottom Renovations, LLC, and over $1,000.000.00 of investment properties in Florida, see response Fidelity National Title Group, Inc.'s supra (Memorandum of Law to dismiss adversary proceedings dated November 16, 2009).

At the time of the filing of the Debtor's INDIVIDUAL PERSONAL voluntary petition of the Chapter 7, the debt listed on the schedules was not fully reported on the schedule of assets and liabilities specifically "Schedule F" as unknown[2]. If correctly calculated, the Debtor would not have to had filed an individual chapter 7 and would have shown that the unsecured debt exceeded the limits for a Chapter 13, in turn able to

---

[1] Movant for SunTrust Mortgage, Inc. supra (DOC 26) *Id.* Monica Gilroy of Dickenson Gilroy, LLC. (here in to referred to as Movant 26) *inter alia; 341 meeting of creditors* disclosed only the representation of SunTrust Mortgage, Inc, prima facia notification to, supra[09-ap-09069 and 09-ap-09075 for a limited special appearance, one night only, filed responses for five of the Defendants in the adversarial cases before this court. Movant 26 su sponted by the Department of Banking and Finance was *Ordered to Cease and Desist from engaging in activities in violation of the Georgia Residential Mortgage Act, O.C.G.A § 7-1-1000 et seq ("the act")*. See Order to Cease and Desist, date Filed Nov. 16, 2009, (p1¶1L.3) the same day Movant 26 attempted to enter the responses due under the summons and rule 7012 for the five of the Defendants all associated entities of SunTrust Bank Holdings.

[2] Ford Motor Credits repossession of $28,000.00 and IMS of $22,000.00 along with Mouser and Mouser of $4,500.00.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

file a chapter 11 small business reorganization.

The Debtor did not have regular income and the debt belonging to the Debtor's Limited Liability Companies incurred from the work performed on the client's homes of the Debtor's Limited Liability Company. In addition the Investment Company that the creditor represented by Movant 26 seeks to foreclose on the investment property located in Florida,[3] see affidavit from Monica Gilroy in an Order to Show Cause, ordered by the Honorable Judge James M Barton of the 13th Judicial Circuit Civil Court in Hillsborough County, Florida. The Honorable Court and the Trustee should have denied the petition of the Chapter 7 and instead filed for protection under Chapter 11 small business reorganization.

With the understanding of the bankruptcy laws by the Debtor now, and that the filing of the voluntary Chapter 7, under 11 U.S.C. §§ 101(41), 109(b) was an unacceptable remedy to the Debtor and that of his Companies shows this Court the following:

1. The Debtor, principle owner in both "Top to Bottom Renovations, LLC.," (here in referred to as "T2B") and "Favre & Bennett, LLC.," (here in referred to as "Favre & Bennett" and collectively referred to as the "Companies"), both of which are Georgia corporations and at the time of the filing of the voluntary individual petition of the chapter 7, Top to Bottom Renovations, LLC was a company in good standings with the state of Georgia with a physical address of 110 South Columbia Drive #11 Decatur Georgia 30030 and can be served at same address.

2. Favre & Bennett is a Georgia Corporation in good standings, and the principle owner in three of the properties[4] of the properties that are the

---

[3] 70% of the debt discharged on April 7, 2009 was that of the Debtor's 'Companies" while 30% of the debt was that of the Debtor personally.

[4] 1914 East Columbus Drive Tampa, Florida, 1816 15th ave Tampa, Florida, and Lot 14 Essex Drive Gulfport, Florida, all of which were incorporated as LLC., in the name of each property, secured by a

3

UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF GEORGIA

### ATLANTA DIVISION

investment properties located in Florida that Movant 26 seeks to foreclose on against the Debtor wrongfully. See affidavit from Monica Gilroy in response to adversary case 09-ap-09069 and 09-ap-09075 along with the pending litigation in the 13th Circuit Civil Court of Hillsborough County Florida, 08-ca-017979, presiding the Honorable Judge James M. Barton.

3.   The majority of the debt discharged on April 7, 2009 belonged to the Debtor's "Companies", although they were listed on the Debtor's schedule, see schedule F revised, and discharged despite the objection of the Debtor.[5]

4.   Under 11 USC § 327, Alex Teel was appointed by this Honorable Court to assist the Trustee and the estate in the proper administration of the estate, with no adverse interest to the estate or the creditors, did not properly take into account the debt that exceeded the limits for a chapter 13, and that of the Debt being primarily that of the Debtor's Companies. The accounting that was not recorded properly was that of Ford Motor Credit is in fact $22,000.00, the debt owed to IMS stated at $6,000.00 is in fact $28,000.00, and the debt owed to Mouser and Mouser listed as unknown was in fact $4500.00 showing that the debt was not accounted for properly. (Doc 17).

5.   In the Trustee's report dated 3/9/2009 In a letter from Gregory Hayes, the Trustee for the Debtors estate elected to initially take control of the Debtors companies. After reviewing the assets, Mr. Hayes declined the appointment as the managing member of T2B, and stated that the collection of the assets would not benefit the creditors.

6.   In the letter declining the nomination as the managing member of

---

construction to perm loan, loan, for a period of nine months. The extended by the Creditor for a individually guaranteed by a member of each LLC. Glenn Favre, John Stokes and Allen Scott Bennett, respectively.

[5] The liabilities of the company was $530,000.00 and while $250,000.00 of that of the Debtors. See financial disclosure statement showing the cost analysis

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

the Debtor's Business's, stated that the account receivables and assets needed to be removed from the schedule of the Debtor, that they did not belong to the debtor.

7.    Mr. Hayes stated in his letter to the Debtor, that he would directly communicate with the Debtor's attorney Angela Hamilton and have the schedules adjusted, this apparently did not happen.

8.    Listed in the schedules was the uncollected debt of the accounts receivables listed in the adversarial proceedings before this Honorable Court filed October 14, 2009 [6].

9.    The Honorable Judge Margaret Murphy stated, "A federal Court must inquire *sua sponte*, into its own subject matter jurisdiction" see an **"ORDER DISMISSING COMPLAINT"**[7], in that order The Honorable Margaret Murphy states "that under 28 U.S.C. § 157(b)(1)the Bankruptcy Court can enter an order in an adversary proceeding only if it is a core proceeding under §157(b)(2). The bankruptcy court has the authority to determine if the proceeding is a core proceeding. Section 157(b)(3) states in relevant part: The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related

---

[6] *Glenn R Favre v SunTrust Mortgage, Inc., et al, Goldman Sachs, SunTrust Bank Holding, Inc., Fidelity National Financial Group, Inc., et al 09-ap-09069 (United States Bankruptcy Court Northern District of Georgia 2009, primary case of 08-bk-85264-mhm); Glenn Favre v Ray Martin, 09-ap-09070 (United States Bankruptcy Court Northern District of Georgia 2009, primary case of 08-bk-85264-mhm); , Glenn Favre v. John Macklin and the Macklin Family Trust, et al.,(United States Bankruptcy Court Northern District of Georgia 2009, primary case of 08-bk-85264-mhm); 09-ap-09071; Glenn Favre v. George Lee Lessesnee 09-ap-09072, Glenn Favre v Eric Miller, 09-a-09073; Glenn Favre v. Kenneth Krell, 09-ap-09074, Glenn Favre v Old Republic, et al., 09-ap-09075, and Glenn Favre 09-ap-09077*

[7] ganbk adversarial no 09-9079 Nov. 9, 2009 Glenn Royce Favre v Judge Franklin Biggins, Veronica Biggins. ."(p2.L1)

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

to a case under title II

10.  The "Debtors Business", had the attorney for the Debtor, Angela
Hamilton or even the Trustee, Gregory Hayes, during the 341 meeting of
creditors followed the instructions of the Debtor.  The Debtor had objected to
the discharge of the Chapter 7 not once but twice during the 341 meeting of
creditors.  The second objection came *inter alia;* Alex Teel, Richard Hunter,
Dale Capelouto and the Debtor on March of 2009 at the offices of Hayes
Financial Consulting.

11.  The intention of the Debtors petition was to seek the assistance
from this Honorable Court with regards to the litigation of the Debtor's
Business v. clients and that of the creditor wrongful filing suit against the
Debtor personally.  (in reference to *SunTrust Mortgage, Inc.*, v *Glenn Favre,*
*Cox Lumber d/b/a HD Supply 08-ca-017979 foreclosure proceeding 13th*
*Circuit Civil Court of Hillsborough County Florida).*

12.  The protection of the 11 USC § 362(a) automatic stay was to
allow the attorney Jeff Muller, ESQ. of The Mueller Law Firm[8] to settle the
Cases of Top to Bottom Renovations, LLC, so that the Debtor Small
Businesses could reorganize and file a repayment plan under Chapter 11 as
Exhibit "D" Debtor's Small Business intent of seeking the protection until
the accounts receivables from Top To Bottom Renovations, LLC were
collected.

13.  The debt for the materials, supplies, wages, taxes were discharged
wrongfully on April 7, 2009 and against the intentions of the Debtor.

14.  The Debtor's Business was profitable during the normal operation
and course of business, and was 100% of the Debtor's income and was the

---

[8] The Mueller Law Firm was appointed in an Order Authorizing the Hiring of Attorneys by the
Honorable Judge Margaret Murphy. Mr. Mueller failed in his appointment and still the cases for T2B
are pending, in turn the reason the debtor filed the adversarial cases before this Honorable Court.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

primary occupation 5 years prior.

15.    The discharge of 11 USC 727 of 08-bk-85264-mhm on April 7, 2009 was a judicial travesty to cover up the fact the Debtor's creditors, clients and that of the regulators, who were responsible for over seeing and ensuring a fair and impartial judicial process, failed.

16.    September 11, 2001 did not have to happen, had it not been for the lack of supervision of those responsible for the regulation and administration of cases filed in the United States Bankruptcy Courts by individuals. The creditors fail to obtain the Patriot Act form to be signed, in turn not realizing where the money is really being disbursed and having an accurate accounting, therefore financing terrorism.

17.    The Debtors creditors, clients and this Court failed in their responsibilities to safe guard the economic stability of the United States economy by filing fraudulent documents, making false statements and abusing the true intent of a fair and impartial judicial process. The fact that the Debtor is a victim of judicial misconduct, legal malpractice, theft by conversion by his clients and has had his Civil Rights violated, Patriot Act Violations, lack of financial regulation, and forced into involuntary chapter 7 is why Glenn R Favre prays that this Honorable Court grants the relief that is sought.

Wherefore, Glenn Royce Favre asks this Honorable Court and that of the Honorable Margaret Murphy to reopen the Chapter 7 Bankruptcy Case of 08-85264-mhm. To allow the Honorable Margaret Murphy to rule on the adversarial proceedings that have been proven to be core and the reason this person is before this Honorable Court, dismiss the Chapter 7 case and award the Favre the monies entitled to him that this Honorable Court deems just and proper.

7

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

12-21-2009

Respectively Submitted December 21, 2009          Glenn Favre pro se

110 South Columbia Drive #11

Decatur, Georgia 30030

404-373-1137

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I Glenn R. Favre, am over the age of 18 years old at the time

of this service, that a true and correct copy of the foregoing has been furnished by

U.S. Mail with the correct postage and faxed to:

MONICA GILROY OF DICKENSON GILROY, LLC

CORPORATE COUNSEL:

SUNTRUST BANK, HOLDINGS, INC.

SUNTRUST MORTGAGE, INC.

FIDELITY NATIONAL FINANCIAL GROUP, INC.

OLD REPUBLIC NATIONAL TITLE, INC

3780 MANSELL ROAD SUITE 140

ALPHARETTA GA 30022

Alice R. Huneycutt , Esquire, STEARNS WEAVER MILLER WEISSLER

ALHADEFF & SITTERSON, P.A.,

SUNTRUST MORTGAGE, INC,

SUNTRUST Financial Centre, Suite 2200          12-21-2009

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

401 E. Jackson Street, P. O. Box 3299, Tampa,
FL 33601, and by facsimile to (813) 222-5089,

CHARLES K. MCKNIGHT, JR.
NATIONS, TOMAN & MCKNIGHT, LLP
1230 PEACHTREE STREET, NE
SUITE 2050
ATLANTA, GA 30309
404-266-2366
FAX : 404-266-2323
EMAIL: CMCKNIGHT@NTMLAW.COM
*LEAD ATTORNEY* THIS

**S. Gregory Hays**
Hays Financial Consulting, LLC
Suite 200
3343 Peachtree Road, NE
Atlanta, GA 30326-1420
(404) 926-0060
**Office of the US Trustee**
Suite 362
75 Spring Street, SW
Atlanta, GA 30303
(404) 331-4437
ustpregion21.at.ecf@usdoj.gov

12-21-2009

"EXHIBIT "

FILED
IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
OF GEORGIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

H. REGINA THOMAS,
CLERK

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| GLENN ROYCE FAVRE, | § | CASE NO. 08-85264-mhm |
| | § | |
| Debtor. | § | Discharged; Closed Case |

| | | |
|---|---|---|
| GLENN ROYCE FAVRE; | § | |
| ALAN SCOTT BENNETT; | § | |
| BERNICE AND DARRYLL GRIFFIN; | § | |
| JOHN A. STOKES; | § | |
| DALE CAPELOUTO, | § | |
| | § | HONORABLE MARGARET MURPHY |
| Plaintiffs, | § | |
| v. | § | ADVERSARY PROCEEDING |
| | § | |
| SUNTRUST BANKS HOLDINGS, | § | NO. 09-9069 |
| et al.; FIDELITY NATIONAL | § | |
| FINANCIAL GROUP, et al.; | § | |
| GOLDMAN SACHS HOLDINGS, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

### FIDELITY NATIONAL TITLE GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS ADVERSARY PROCEEDING FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

COMES NOW, FIDELITY NATIONAL TITLE GROUP, INC. (hereinafter,

"Fidelity"),[1] by and through its undersigned counsel, by special limited appearance

---

[1] "Fidelity National Financial Group", one of the named Defendants in the above-captioned adversary proceeding, is not a legal entity. The initial pleading

and preserving all defenses, and files this Memorandum of Law in Support of its Motion to Dismiss Adversary Proceeding for Failure to State a Claim Upon Which Relief Can be Granted (hereinafter, the "Motion to Dismiss" or, alternatively, the "Motion"), respectfully showing this honorable Court the following:

## PRELIMINARY STATEMENT

Fidelity, by special limited appearance, seeks dismissal of the Adversary Complaint as against Fidelity, any related Fidelity entity, and any Fidelity agent or employee if, in fact, it is the intent of the Plaintiff(s) to seek relief against the same. Fidelity, through counsel, submits that the Court should dismiss this adversary action on the grounds, *inter alia*, that (i) Mr. Favre has failed to properly serve a real legal entity with Summons and a copy of the Complaint as required by FED. R. CIV. P. 4 and FED. R. BANKR. P. 7004; (ii) the Court has no personal jurisdiction over Fidelity; (iii) the Court lacks subject matter jurisdiction over the claim(s) at issue in this adversary proceeding; and (iv) the Adversary Complaint fails to state any claim whatsoever against Fidelity upon which relief can be granted.

---

filed by Plaintiff Glenn Royce Favre (a/k/a Glenn R. Favre) (hereinafter, "Mr. Favre" or, alternatively, the "Plaintiff" or the "Debtor"), entitled "Complaint [for Violations of TILA, RESPA, Reg. Z, Civil RICO, SEC, CFTC, Malice, Negligent Misrepresentation, Intent to Defraud Consumers, Civil False Claims]" [sic] (hereinafter, the "Adversary Complaint" or, alternatively, the "Complaint"), in addition to "Fidelity National Financial Group", also vaguely refers to purported acts and/or omissions allegedly committed by Fidelity employees and agents, and other Fidelity related entities.

2

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Upon information and belief, this Court is familiar with the facts relevant to Fidelity's Motion, as these facts have been set forth previously in numerous motions and briefs filed in the underlying (now closed and discharged) Chapter 7 Bankruptcy Case filed by the Plaintiff on or about December 9, 2008. [*In re: Glenn Royce Favre*; Case No. 08-85264 (Bankr. N.D. Ga. April 7, 2009) (hereinafter, the "Bankruptcy Case")].[2] In the interest of judicial economy and the Court's time and resources, Fidelity, through counsel, submits the following pertinent facts and procedural history in support of its Motion for this honorable Court's consideration.[3]

This adversary proceeding apparently arises from Mr. Favre's investment in realty located in Florida, which real property is more commonly known as 1914 East Columbus Drive, Tampa, Hillsborough County, Florida (hereinafter, the "subject property" or, alternatively, the "Property"). On or about August 8, 2005, Mr. Favre obtained a loan from SunTrust Mortgage, Inc. (hereinafter, "SunTrust Mortgage")

---

[2] *Please see*, specifically, SunTrust Mortgage, Inc.'s Motion for Relief From the Automatic Stay (hereinafter, the "Motion for Relief"). [Bankr. Docket No. 26].

[3] For purposes of the instant Rule 12(b)(6) Motion, well-pleaded factual allegations of the Adversary Complaint must be accepted as true. FED. R. CIV. P. 12(b) and FED. R. BANKR. P. 7012(b). Fidelity, through counsel, summarizes the allegations relevant to the Motion to Dismiss in this section. However, the allegations, as summarized herein, are assumed to be true *solely* for purposes of this Motion, and their recitation herein should not be deemed to be an admission by Fidelity.

3

in the amount of Two Hundred Forty-Eight Thousand Dollars ($248,000.00) for the construction of a single-family residence on the subject property (hereinafter, the "financing transaction" or, alternatively, the "Loan"). *Please see* Motion for Relief [Bankr. Docket No. 26] at pp. 2-3, ¶¶ 4-7; *please see also* Debtor's Voluntary Petition [Bankr. Docket No. 1], Schedule A – Real Property, and Schedule D – Creditors Holding Secured Claims. The residence was to be constructed by Urban Craftsman Homes of Florida, LLC. *Please see* Motion for Relief, *supra.*, at p. 3, ¶ 5.

To evidence this financing transaction, Glenn R. Favre executed and delivered to SunTrust Mortgage an Adjustable Rate Note, dated August 8, 2005, in the original principal amount of Two Hundred Forty-Eight Thousand Dollars ($248,000.00) (hereinafter, the "Note").[4] *Please see* Motion for Relief [Bankr. Docket No. 26] at pp. 2-3, ¶ 5, and Exhibit "A" thereto. The Note was secured by a Mortgage, supplemented and modified by an Adjustable Rate Rider and a Construction Loan Rider, all dated August 5, 2005 and executed and delivered by Glenn R. Favre, conveying the Property to SunTrust Mortgage to secure repayment of the Loan

---

[4] Mr. Favre was represented at the closing on August 8, 2005 by A. Keith Sanders (a/k/a Andre Keith Sanders, a/k/a Keith Sanders), acting under Power of Attorney for Real Estate, as Mr. Favre's attorney in fact for the financing transaction. Florida Title Insurance, LLC (located in Tampa, Florida) was the settlement agent for the Loan closing.

(hereinafter, the "Mortgage"). Id. at p. 3, ¶ 7, and Exhibit "B" thereto.[5]  The

Mortgage was recorded on August 8, 2005 in Official Records Book 15401, Page 795

of the public records of Hillsborough County, Florida. Id.[6]

Also in connection with the financing transaction, Chicago Title Insurance

Company (hereinafter, "Chicago Title") issued the Lender [SunTrust Mortgage] a

policy of insurance on the title to the Property (hereinafter, the "Lender's Policy");

Chicago Title is a title insurance underwriter of Fidelity. No owner's title insurance

policy was issued [to Mr. Favre] in connection with the financing transaction.

Mr. Favre filed the instant adversary proceeding in the *closed* Bankruptcy

Case on October 14, 2009,[7] naming as Defendants, *inter alia*, "SunTrust Banks

---

[5] Mr. Favre refers, albeit vaguely, to the Note and Mortgage in the
Adversary Complaint, and such documents are integral to his claims against the
named Defendants in the Complaint; therefore, this Court may consider the Note
and Mortgage without converting this Motion to Dismiss into a Motion for
Summary Judgment.

[6] A court may take judicial notice of public records in considering a motion
to dismiss. *See* Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999),
*rev'd and remanded on other grounds* Bryant v. Dupre, 252 F.3d 1161 (11th Cir.
2001). *See also* Stahl v. U.S. Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003)
("The district court may take judicial notice of public records and may thus
consider them on a motion to dismiss.").

[7] This case is one of *nine (9)* adversary proceedings filed by Mr. Favre *after*
the close of the Bankruptcy Case, the closing of the bankruptcy estate, and the
Debtor's discharge on April 7, 2009. *Please see* Order Discharging the Debtor [Mr.
Favre] and Closing the Estate, entered April 7, 2009 (hereinafter, the "Discharge
Order"). [Bankr. Docket No. 30]. Seven (7) of these adversary proceedings,
includng the matter at bar, were filed within a three (3)-day period.

5

Holdings, et al.";[8] "Fidelity National Financial Group, et al." (*please see* n.1, *supra.*);

and "Goldman Sachs Holdings, Inc., et al.".[9] [Bankr. Docket No. 33; Docket No. 1].

Although Mr. Favre is purportedly asserting that the claims alleged and the relief

sought in the Complaint are also on behalf of Alan Scott Bennett (hereinafter, "Mr.

Bennett") and, by association, "Favre and Bennett, LLC", as well as Bernice and

Darryll Griffin (collectively, hereinafter, the "Griffins"), John A. Stokes (hereinafter,

"Mr. Stokes"), and Dale Capelouto (hereinafter, "Mr. Capelouto"), the record in this

matter reflects that only Mr. Bennett has actually "signed" the Complaint. *Please see*

Amended Complaint [Docket No. 10].


## ARGUMENT AND SUPPORTING AUTHORITY

Initially, Fidelity submits that the Complaint should be dismissed as to

purported Plaintiffs Alan Scott Bennett, Bernice and Darryll Griffin, John A. Stokes,

and Dale Capelouto. Not one of these individuals has standing in the instant

Adversary Proceeding. Moreover, only Mr. Bennett has actually "signed" the

Complaint filed by Mr. Favre. Since it does not appear that Plaintiff Glenn Royce

---

[8] Upon information and belief, "SunTrust Banks Holdings" is not a legal
entity.

[9] Apparently, "Goldman Sachs Holdings, Inc." is not a legal entity either.
*Please see* The Goldman Sachs Group, Inc.'s Motion for an Extension of Time to
Respond. [Docket No. 12].

Favre (a/k/a Glenn R. Favre) is a licensed attorney in the State of Georgia, he cannot represent Messrs. Bennett, Stokes and Capelouto, nor can he represent the Griffins, as such would be the unauthorized practice of law. Fidelity further submits that Mr. Favre lacks standing to raise the claims asserted in this adversary proceeding given the close of his Chapter 7 Bankruptcy Case, the closing of the bankruptcy estate, and Mr. Favre's discharge on April 7, 2009.

Notwithstanding the foregoing, the Adversary Complaint sets forth a series of incomprehensible allegations and assertions against the multiple named (but non-existent) Defendants for conspiracy, fraud, and for violations of, *inter alia*, the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"); Regulation Z, 12 C.F.R. §§ 226.1 *et seq.* ("Reg. Z"); and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"). Mr. Favre, who is appearing *pro se*, also seeks to recover actual and statutory damages, damages for his purported pain and suffering, attorney fees, and court costs pursuant to the named Defendants' alleged violation(s).

Although Mr. Favre has failed to properly serve any legal entity in this adversary action and, thus, this matter is subject to dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), and Federal Rules of Bankruptcy Procedure 7012(b)(2) and 7012(b)(5)[**], the Court does not need to reach that issue in its

---

[**] Fidelity, through counsel, specifically reserves the right to raise the affirmative defense(s) of, *inter alia*, lack of personal jurisdiction, insufficiency of

consideration of the present Motion. As shown below, Mr. Favre has failed to state

any cause of action against Fidelity upon which relief may be granted. Accordingly,

Fidelity submits that this Court should dismiss all claims raised by the Plaintiff

against the non-existent entity identified as "Fidelity National Financial Group" in

this adversary proceeding.

### A.   THE STANDARD FOR DISMISSAL.

Federal Rule of Civil Procedure 12(b)(6), made applicable in adversary

proceedings by Federal of Bankruptcy Procedure 7012(b)(6), provides that a

complaint may be dismissed for failure to state a claim upon which relief can be

granted if it appears that the plaintiff can prove no set of facts in support of the

claim(s) entitling the plaintiff to relief. Haines v. Kerner, 404 U.S. 519 (1975); Conley

v. Gibson, 351 U.S. 41 (1957). "[The Court] accept[s] as true the allegations in

Plaintiff's complaint, and construe[s] the facts in the light most favorable to the

Plaintiff." Neal v. Fulton County Board of Eduction, 229 F.3d 1069, 1072 (11th Cir.

2000) [Cit. omitted.]. As shown below, Fidelity owes no duty whatsoever to Mr.

Favre arising from the financing transaction which is the subject of the instant

adversary proceeding.

---

process, and insufficiency of service of process at a later date.

**B.    THE ADVERSARY COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) AND FED. R. BANKR. P. 7012(b)(6).**

The Complaint in this adversary proceeding, on its face, fails to state a comprehensible claim against any named Defendant upon which relief can be granted and, therefore, the Adversary Complaint should be dismissed. FED. R. CIV. P. 12(b)(6) and FED. R. BANKR. P. 7012(b)(6).  It is appropriate to dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(6) if it is clear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. 41, 45-46. *See also* Williams v. Alabama State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) ("In deciding whether the complaint states a claim [the Court] accept[s] all well-pleaded facts in the complaint as true and draw[s] all inferences in the plaintiff's favor."); Miccosukee Tribe of Indians of Fla. v. So. Everglades Restoration Alliance, 304 F.3d 1076, 1084 (11th Cir. 2002) (Any ambiguities are construed in the plaintiff's favor.).  Where, as here, a litigant is proceeding *pro se*, the Court must also be guided by the principle that a "document filed *pro se* is 'to be liberally construed,' ... , and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erikson v. Pardus, 551 U.S. 89 (2007), *quoting* Estelle v. Gamble, 429 U.S. 97, 106 (1976); *see also* Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (Discussing that *pro se* filings are entitled to liberal construction).

9

Nevertheless, "conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." Farrell v. Time Service, Inc., 178 F. Supp. 2d 1295 (N.D. Ga. 2001) (Citations omitted).

Further, the Federal Rules of Civil Procedure and the Federal Rules of Bankrutpcy Procedure require that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) and FED. R. BANKR. P. 7008(a)(2). "[A] pleading [cannot] survive dismissal when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1271 (11th Cir. 2004). While the complaint need not provide detailed factual allegations, it must give sufficient factual allegations "to raise a right to relief above the *speculative* level"; that is, the complaint must give "only enough facts to state a claim to relief that is *plausible on its face*." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 570 (2007) (Emphasis added). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. at 556, n.3.

In the adversary action at bar, Mr. Favre has not set forth in the Complaint any specific *factual* allegation(s) with respect to alleged wrongdoing by *any* legal entity named as a Defendant herein, nor can any construction of the Complaint

10

support a cause of action against any of these non-existent named Defendants. Rather, the Adversary Complaint sets forth a series of vague claims, incomprehensible allegations, and assertions against multiple defendants that, on its face, fails to state a claim under Twombly, *supra.*, and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The Complaint consists largely of quotations from various Florida statutes and does not specify the basis for a claim against *any* named Defendant. Moreover, Mr. Favre is "confused" as to any duty owed him by Fidelity in defense of the pending foreclosure of the Property at issue in this adversary proceeding. Fidelity owes no duty to Mr. Favre; rather, the duty to defend title of the Property is owed to the Lender [SunTrust Mortgage], the party that purchased the title insurance policy. Obviously, such unsubstantiated allegations are insufficient to support a claim against Fidelity, and dismissal of the Complaint in the above-captioned adversary proceeding is both appropriate and warranted.

### C.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 8 AND FED. R. BANKR. P. 7008.

Federal Rule of Civil Procedure 8 is applicable in adversary proceedings. FED. R. BANKR. P. 7008. As noted above (*please see* Section B, *supra.*), a complaint in an adversary proceeding must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) and FED. R. BANKR. P. 7008(a)(2). Further, a pleading which sets forth a claim for relief must

11

contain "a short and plain statement of the grounds upon which the court's jurisdiction depends [...]." FED. R. CIV. P. 8(a)(1) and FED. R. BANKR. P. 7008(a)(1). Finally, a complaint must contain "a demand for judgment for the relief the the pleader seeks." FED. R. CIV. P. 8(a)(3) and FED. R. BANKR. P. 7008(a)(3).

While "[a]ny concise statement identifying the remedies and the parties against whom relief is sought" is sufficient to meet the requirements of Federal Rule of Civil Procedure 8, compliance with the rule is necessary. *See* Goldsmith v. City of Atmore, 996 F.2d 1155, 1161 (11th Cir. 1993). The court in Goldsmith found that, notwithstanding the "wide latitude generally afforded pro se litigants", the plaintiff's complaint was insufficient to support a civil action where the pro se plaintiff failed to include a concise statement identifying the remedies and the parties against whom relief is sought. Id.

Notwithstanding Mr. Favre's failure to state a cognizable claim against any of the named Defendants upon which relief can be granted (*see* Section B, *supra*.), the Complaint in the instant adversary action fails to set forth the grounds upon which this Court's jurisdiction depends. FED. R. CIV. P. 8(a)(1) and FED. R. BANKR. P. 7008(a)(1). Nor does the Adversary Complaint in this action identiy the remedy(ies) sought from the numerous named Defendants in comportment with Federal Rule of Civil Procedure 8(a)(3) and Federal Rule of Bankruptcy Procedure 7008(a)(3). The Complaint herein further fails to demand judgment. FED. R. CIV. P. 8(a)(3) and FED.

R. BANKR. P. 7008(a)(3).  As such, the Adversary Complaint in the case at bar

completely fails to meet the minimum requirements of a pleading. FED. R. CIV. P. 8

and FED. R. BANKR. P. 7008.  Accordingly, the Complaint, and this adversary

proceeding, should be dismissed.

> D.   THE ADVERSARY COMPLAINT SHOULD BE DISMISSED
> UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND
> 12(b)(5), AND FEDERAL RULES OF BANKRUPTCY PROCEDURE
> 7012(b)(2) AND 7012(b)(5).

Federal Rule of Civil Procedure Rule 4 and Federal Rule of Bankruptcy

Procedure 4 set out the specific requirements for service of a summons and a copy

of the complaint[::] upon a defendant. FED. R. CIV. P. 4(e) and FED. R. BANKR. P. 4(e).

The serving party (Mr. Favre in the present adversary matter) bears the burden of

proof with regard to its (his) validity or good cause for failure to effect timely

service. Aetna Business Credit v. Universal Decor & Interior Design, 635 F.2d 434,

---

[::] Fidelity respectfully requests the Court take judicial notice of the fact, as
noted previously, that purported Plaintiffs Bernice and Darryll Griffin, John A.
Stokes and Dale Capelouto failed to sign the initial pleading in the adversary
matter at bar in clear violation of Federal Rule of Civil Procedure 11, made
applicable in adversary proceedings, and, as such, this Court has the ability to
strike the Complaint in its entirety. FED. R. CIV. P. 11(a) ("Every pleading, written
motion, and other paper *must be signed ... by a party personally* if the party is
unrepresented. The paper must state the signer's address, email address, and
telephone number") (Emphasis added).

13

435 (5th Cir. 1981)[22]; Profit v. Americold Logistics, LLC, 248 F.R.D. 293, 296 (N.D. Ga. 2008); *see also* Systems Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990).

As stated in detail above, the Adversary Complaint in the case at bar purports to name "Fidelity National Financial Group", a non-existent entity (*please see* n.1, *supra.*), as one of the Defendants herein. However, the Complaint fails to identify any purported relationship between *any* Fidelity entity and the Plaintiff(s). Furthermore, no Fidelity entity was a party to the underlying Bankruptcy Case. Service of the Complaint in this adversary proceeding was purportedly attempted by email transmission and FAX to Own [sic] Girard, identified as "General Counsel" of "Fidelity National Financial Group" in Omaha, Nebraska. Notwithstanding the threshold issues as to whether a proper entity has been even named and served, Fidelity submits that Mr. Favre has failed to meet the burden incumbent upon him to properly serve Fidelity in the instant adversary action.

---

[22] The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

14

Where, as here, the plaintiff has failed to properly serve the defendant(s),[13] this Court lacks personal jurisdiction over Fidelity and this adversary proceeding is subject to dismissal. FED. R. CIV. P. 12(b)(2) and 12(b)(5), and FED. R. BANKR. P. 7012(b)(2) and 7012(b)(5). Given the fact that Mr. Favre has failed to properly serve any named Defendant, Fidelity submits that the Adversary Complaint must be dismissed because this Court lacks personal jurisdiction over the named Defendants and, as such, the Court is without the means by which to adjudicate the alleged claim(s) presented in the Complaint.

## CONCLUSION

The initial pleading filed in the instant litigation is both unintelligible and incomprehensible as well as, in many instances, nonsensical. Consequently, it is virtually impossible to discern from this pleading any violation(s) of law which could be deemed cognizable and which would warrant the equally vague remedies Mr. Favre apparently seeks. Fidelity, by and and through counsel and preserving all defenses, respectfully submits that the Complaint in this adversary proceeding fails to state any claim upon which relief can be granted and, accordingly, should be

---

[13] "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990).

15

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of

Bankruptcy Procedure 7012(b)(6).

For all the foregoing reasons, FIDELITY NATIONAL TITLE GROUP, INC.

respectfully requests that this Court grant its Motion to Dismiss and enter an Order

dismissing all of Mr. Favre's claims against Fidelity with prejudice, casting all costs

against Mr. Favre.

Respectfully submitted this 16th day of November, 2009.

DICKENSON GILROY LLC


/s/   Monica K. Gilroy
MONICA K. GILROY
Georgia Bar No. 427520
**Attorney for Fidelity National Title**
**Group, Inc.**

3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
Tel: (678) 280-1922
Fax: (678) 280-1923
Email: Monica.Gilroy@dickensongilroy.com

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and that, in accordance with BLR 5005-5
(Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing
*Fidelity National Title Group, Inc.'s Memorandum of Law in Support of its Motion*
*to Dismiss Adversary Proceeding for Failure to State a Claim Upon Which Relief*
*Can be Granted* in the above-captioned adversary proceeding with the Clerk of
Court using the CM/ECF system, which will automatically send e-mail notification
of such filing to all counsel of record in this matter, and, further, that I have served

16

the Plaintiff, appearing *pro se*, with a copy of this pleading by placing a true and correct copy of same in the United States Mail, with first-class postage affixed thereto, properly addressed as follows:

Glenn Royce Favre
110 S. Columbia Drive #11
Decatur, Georgia 30030

This 16th day of November, 2009.

/s/   Monica K. Gilroy
MONICA K. GILROY
(Georgia Bar No. 427520)
Counsel for SunTrust Mortgage, Inc. and
SunTrust Banks, Inc.

DICKENSON GILROY LLC
Corporate Office
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
Tel:  (678) 280-1922
Fax: (678) 280-1923
Email: Monica.Gilroy@dickensongilroy.com

17



# Department of Banking and Finance

*2990 Brandywine Road, Suite 200*
*Atlanta, Georgia 30341-5565*

*Sonny Perdue*
*Governor*

770-986-1633
*www.gadbf.org*

*Robert M. Braswell*
*Commissioner*

October 14, 2009

**VIA CERTIFIED MAIL – 7005 1820 0006 4359 2815**

FILED

Fidelity National Legal Services
c/o Kathy Deleon, Registered Agent
9340 Baseline Road
Suite 105
Rancho Cucamonga, California 91701

NOV 1 6 2009

GEORGIA DEPARTMENT OF
BANKING AND FINANCE

## ORDER TO CEASE AND DESIST

Pursuant to O.C.G.A. § 7-1-1018(a), the Georgia Department of Banking and Finance ("Department") hereby orders you, **Fidelity National Legal Services**, to cease and desist from engaging in activities in violation of the Georgia Residential Mortgage Act, O.C.G.A. § 7-1-1000 *et seq* ("the Act"). O.C.G.A. § 7-1-1002(a) prohibits any person from transacting business as a residential mortgage broker or residential mortgage lender unless licensed or exempted from licensing requirements. The Department has documentation that **Fidelity National Legal Services** violated the Act, specifically O.C.G.A. § 7-1-1002, by engaging in residential mortgage broker/lending activities without a valid license or pursuant to an applicable exemption.

This Order shall be final thirty days from the date of issuance. O.C.G.A. § 7-1-1018(a). The Department, however, may rescind the Order to Cease and Desist if within this thirty-day period you provide the Department with documentation showing that **Fidelity National Legal Services** possesses a valid license or qualifies for an exemption found in O.C.G.A. § 7-1-1001. If the Department finds no valid license or applicable exemption exists, the Order to Cease and Desist shall become a final order of the Department pursuant to O.C.G.A. § 7-1-1018(a). Should you have any questions concerning this matter, please direct them to Felicia Faison-Holmes, Non-Depository Financial Institutions Division Attorney, at (770) 986-1648.

Rod Carnes, CFE
Deputy Commissioner
Non-Depository Financial Institutions Division

*Apply for Banking Dealer*
*He Licencen or Brokers*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDINE ECHOLS &
ANGELIA ECHOLS,

Plaintiffs,

v.

ASSET ACCEPTANCE, LLC,
SUNTRUST BANK,
THE HOME DEPOT, INC.,
CITIBANK (SOUTH DAKOTA)
N.A.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION FILE

NO. 1:07-cv-02952-TWT-ECS

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

(1)   The undersigned counsel of record for a party to this action certifies that the following is a full and complete list of all parties in this action, including any parent corporation and any publicly held corporation that owns 10% or more of the stock of a party:

**Plaintiffs:**   Claudine Echols and Angelia Echols

**Defendant:**   SunTrust Bank
SunTrust Bank Holding Company
SunTrust Banks, Inc.



**RISK MANAGEMENT**
*Fidelity National Financial Family of Companies*

<u>NEWS RELEASE  October 15, 2007</u>

*Chicago, Illinois--Fidelity National Financial Family of Companies introduces UCCPlus Risk Management Program, setting a new standard of "Best-Practice Protection" for Secured Lenders*

Fidelity has introduced *UCCPlus Risk Management* as a credit quality and liquidity tool for secured lenders facing greater regulatory scrutiny, tighter underwriting standards, increased operational risk and tougher regulatory capital requirements.

The new *UCCPlus Risk Management Program* allows secured lenders in the non-real estate commercial loan segments to minimize loan loss reserves, reduce regulatory capital requirements and improve liquidity by enhancing credit quality *through the use of a new risk management tool that insures the lenders security interest in non-real estate collateral for validity, enforceability, attachment, perfection and priority.*

*UCCPlus* coverage includes UCC search and filing functions; and protects the lender from fraud, forgery, documentation defects and search office errors and omissions. *UCCPlus* also reduces lender's legal fees, providing for the cost-of-defence in the event of a challenge to the lender's lien priority on reliance collateral.

Policies can be ordered by placing one phone call to Fidelity's *UCCPlus Risk Management Program*, or by completing a one-page form that allows Fidelity's *UCCPlus* commercial finance lawyers and paralegals to gather and underwrite transactional documents.

Many of the nation's leading publications have reported on *credit quality and liquidity problems* related to the collapse of the "sub-prime" real estate market segment. And, it has been reported that many industry experts may have failed to consider the significant exposure and danger in *unrecognized risk* inherent in the sub-prime markets.

According to Theodore H. Sprink, Senior Vice President and National Marketing Director of Fidelity's UCC Insurance Division, "banks that benefited from originating newly created loan products frequently downplayed both credit worthiness and the importance of reliance collateral". "These 'relaxed underwriting standards', now pose greater operational risk, investor worry, regulatory scrutiny, rating agency concern, credit quality issues and liquidity problems", Sprink added.

It is the *non-real estate commercial loan market*, in the view of many, that has remained under the radar screen of CDO investors, regulators and rating agencies.  Commercial loans, often *underwritten and funded based on reliance collateral*, are subject to Article 8 and Article 9 of the Uniform Commercial Code.

Sprink expressed concern that sub-prime credit quality and liquidity problems may spread from residential real estate into the non-real estate commercial loan markets due to the highly competitive nature of commercial lending, the waiving of traditional covenants, masked documentation defects, the failure of banks to "price to risk", looming new capital requirements reflected in Base I to Basel II implementation, and the failure of lenders to insure their lien position in reliance collateral.

Not unlike the sub-prime market, Sprink suggested that rising defaults and greater reliance on non-real estate collateral, may have a profound impact on the financial health of major lenders, should the current credit quality and liquidity problems spread into non-real estate commercial loan market segments.

Sprink indicated the title insurance industry recently developed "UCC Insurance" as a risk management tool, specifically to provide an element of back-stopping the threat to the bank's security interest in non-real estate collateral.   It is anticipated by Sprink that the secondary market will come to place a premium on loans and commercial loan portfolios in which the secured lender has obtained insurance for lien attachment, perfection and priority.

Fidelity National Financial (FNF) and the Fidelity National Title Group (FNTG) comprise the nation's largest and most respected title insurance and escrow companies, producing policies under the Fidelity National Title, Chicago Title, Ticor Title, Security Union Title and Alamo Title insurance company brands. FNTG currently issues nearly one in three residential and commercial title insurance policies in the U.S., also providing centralized title and closing services to national lenders through its ServiceLink entity.

Additional details concerning Fidelity's *UCCPlus Risk Management Program* are available by contacting Theodore Sprink at 619-744-4410, via e-mail tsprink@fnf.com, or by visiting www.uccplus.com



*Fidelity National Financial Family of Companies*

Aug 27 09 06:04a 08-EMC Search, LLC   Doc 58   Filed 12/09/09   Entered 12/09/09 14:39:048   Desc Main
Real Quest.com 08-85264 brhm   Doc 78   Filed 12/21/09   Entered 12/22/09 15:37:17   Page 1 of 2   Desc Main
Document   Page 32 of 72

PTNRA No: 09-04189

**FILED OCT 6 9 2009**

## Foreclosure Activity Report
For Property Located At

**RealQuest** Professional™

### 1914 E COLUMBUS DR, TAMPA FL 33605

**Most Recent Foreclosure Transaction:**

| | | | |
|---|---|---|---|
| Foreclosure Doc Type: | FINAL JUDGEMENT | Foreclosure Stage: | AUCTION |
| Recording Date: | 11/19/2008 | Filing Date: | 11/06/2008 |
| Foreclosure Doc #: | 401551 | Recording Book/Page: | 18968 / 1223 |

| | | | |
|---|---|---|---|
| Defendant 1: | URBAN CRAFTSMAN HMS OF FLORIDA | Plaintiff 1: | HD SUPPLY LUMBER & BUILDING MA |
| Defendant 2: | MCKELVIN GEORGE H | Plaintiff 2: | |
| Defendant 3: | | | |
| Defendant 4: | | | |

| | | | |
|---|---|---|---|
| Attorney Name: | FREDERICK L MOUSER | Attorney Phone #: | |
| | | Case #: | 07-7640 |

| | | | |
|---|---|---|---|
| Auction Date: | 12/10/2008 | Opening Bid Amount: | |
| Auction Time: | 2:00 | Judgement Amount: | $4,397 |
| Auction Address: | 800 E TWIGGS ST 2ND FL RM 201/ | | |
| City: | TAMPA | | |

**Default Mortgage Information:**

Refiled w/

| | | | |
|---|---|---|---|
| Mtg Amt/Type: | / | Monthly Pymt Amt: | |
| Mtg Recording Date: | | Default Amt: | |
| Mtg Doc #: | | Default Date: | 03/01/2007 |
| Mtg Book/Page: | | | |
| Lender: | | | |
| Lender Address: | | | |
| City: | | | |
| State: | | Vesting Codes: | / / |
| Zip: | | Title Company: | ATTORNEY ONLY |

**Location Information:**

| | | | |
|---|---|---|---|
| Legal Description: | NISTALS MAP SUBDIVISION OF BLOCK 5 OF CUSCADEN'S SUBDIVISION E 28 FT OF LOT 13 | | |
| County: | HILLSBOROUGH, FL | APN: | 187642-0000 |
| Subdivision: | NISTALS MAP | Map Reference: | 109 / 145-A5 |
| Legal Lot: | 13 | Township-Range-Sect: | 29-19-07 |
| Legal Block: | 5 | Munic/Township: | |

**Last Market Sale Information:**

| | | | |
|---|---|---|---|
| Sale Date: | 08/08/2005 | 1st Mtg Amount/Type: | $248,000 / |
| Recording Date: | 08/22/2005 | 1st Mtg Int. Rate/Type: | 5.25 / ADJ |
| Sale Price: | $60,000 | 2nd Mtg Amount/Type: | / |
| Sale Type: | | 2nd Mtg Int. Rate/Type: | / |
| | | Seller: | URBAN CRAFTSMAN HMS OF FLORIDA LL |
| Deed Type: | WARRANTY DEED | | |
| Deed Doc #: | 15401-794 | | |

**Owner Information:**

| | | | |
|---|---|---|---|
| Owner Name: | FAVRE GLENN | | |
| Mailing Address: | 1117 VIRGINIA AVE NE | | |
| City: | ATLANTA | | |
| State: | GA | Carrier Route: | C004 |
| Zip: | 30306-3525 | Owner Phone #: | |

**Owner Transfer Information:**

| | | | |
|---|---|---|---|
| Sale Date: | | Deed Type: | |
| Recording Date: | | Deed Doc #: | |
| Sale Price: | | Vesting Codes: | / / |

300 S. Riverside Plaza   Suite 1800   Chicago, Illinois   .3570   312.781.1467 fax   www.nistalfutures.org

*[handwritten: Endorsement. Paul & Denny Woronowitz. Document - not on credit report.]*

**ENDORSEMENT**

Attached to Policy No.

**APPROVED**

| Date Received: | Date of Action: |
|---|---|
| **JAN 30 2007** | **APR 6 2007** |

OFFICE OF INSURANCE REGULATION

**Issued by**
**CHICAGO TITLE INSURANCE COMPANY**

The Company agrees that in the event of an occurrence of loss insured against by this policy, the Company will not deny liability hereunder on the ground that a dissolution or termination of the insured, whether it is a corporation, partnership, limited partnership, limited liability company or business trust, has occurred or a new entity has been formed by reason of one or more of its partners, members, shareholders, beneficiaries, or certificate holders having transferred their interest to another person or entity; by reason of withdrawal of one or more of the partners, members, shareholders or certificate holders from the Insured; or by reason of the addition of one or more person or entities as a partner, member, shareholder or certificate holder.

Nothing contained herein shall be construed as extending the insurance hereunder as to matters attaching or created subsequent to the date hereof; or insuring the status of the Insured after the transfer of the interest of a partner, member, shareholder or certificate holder or after the withdrawal or addition of new partners, members, shareholders or certificate holders.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy, nor does it increase the face amount thereof.

Dated:

CHICAGO TITLE INSURANCE COMPANY

By: *[signature]*
President

ATTEST *[signature]*
Secretary

# EXIBIT

Change of Partners, Members, or Shareholders Endorsement
SE-108

## Property Detail Report
For Property Located At

**RealQuest** Professional™

## 6240 LAKEVIEW CT, REX GA 30273-5032

### Owner Information:
| | |
|---|---|
| Owner Name: | **FAVRE GLENN** |
| Mailing Address: | **110 S COLUMBIA DR #11, DECATUR GA 30030-5318 C003** |
| Phone Number: | Vesting Codes: / / |

### Location Information:
| | | | |
|---|---|---|---|
| Legal Description: | **LOT 15** | | |
| County: | **CLAYTON, GA** | APN: | **12-137D-00D-0010** |
| Census Tract / Block: | **404.11 / 5** | Alternate APN: | |
| Township-Range-Sect: | | Subdivision: | **ELLENWOOD VILLAGE** |
| Legal Book/Page: | | Map Reference: | **12-137D /** |
| Legal Lot: | **15** | Tract #: | |
| Legal Block: | | School District: | **1301230** |
| Market Area: | | Munic/Township: | **UNINC CNTY-FIRE** |
| Neighbor Code: | | | |

### Owner Transfer Information:
| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

### Last Market Sale Information:
| | | | |
|---|---|---|---|
| Recording/Sale Date: | **03/15/2004 / 02/12/2004** | 1st Mtg Amount/Type: | **$119,600 / CONV** |
| Sale Price: | **$132,900** | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | | 1st Mtg Document #: | **7374-155** |
| Document #: | **7374-152** | 2nd Mtg Amount/Type: | / |
| Deed Type: | **WARRANTY DEED** | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | **$86.35** |
| New Construction: | **Y** | Multi/Split Sale: | |
| Title Company: | **ATTORNEY ONLY** | | |
| Lender: | **SUN AMERICA MTG CORP** | | |
| Seller Name: | **LEGACY COMMUNITIES OF ELLENWOOD PAR** | | |

### Prior Sale Information:
| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | / | Prior Lender: | |
| Prior Sale Price: | | Prior 1st Mtg Amt/Type: | / |
| Prior Doc Number: | | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | | | |

### Property Characteristics:
| | | | | | |
|---|---|---|---|---|---|
| Gross Area: | **1,539** | Parking Type: | | Construction: | **STONE** |
| Living Area: | **1,539** | Garage Area: | | Heat Type: | |
| Tot Adj Area: | | Garage Capacity: | | Exterior wall: | |
| Above Grade: | | Parking Spaces: | | Porch Type: | |
| Total Rooms: | **6** | Basement Area: | | Patio Type: | |
| Bedrooms: | **3** | Finish Bsmnt Area: | | Pool: | |
| Bath(F/H): | **2 /** | Basement Type: | **BASEMENT** | Air Cond: | **BUILDING** |
| Year Built / Eff: | **2004 / 2004** | Roof Type: | | Style: | **RANCH** |
| Fireplace: | **Y / 1** | Foundation: | | Quality: | **AVERAGE** |
| # of Stories: | | Roof Material: | | Condition: | |
| Other Improvements: | | | | | |

### Site Information:
| | | | | | |
|---|---|---|---|---|---|
| Zoning: | **CPUD** | Acres: | **0.03** | County Use: | |
| Flood Zone: | **X** | Lot Area: | **1,439** | State Use: | **RESIDENTIAL (R)** |
| Flood Panel: | **1300410070C** | Lot Width/Depth: | **52 x** | Site Influence: | |
| Flood Panel Date: | **11/20/2000** | Res/Comm Units: | **1 /** | Sewer Type: | **SEPTIC TANK** |
| Land Use: | **SFR** | | | Water Type: | |

### Tax Information:
| | | | | | |
|---|---|---|---|---|---|
| Total Value: | **$131,772** | Assessed Year: | **2008** | Property Tax: | **$1,764.67** |
| Land Value: | **$30,000** | Improved %: | **77%** | Tax Area: | **8** |
| Improvement Value: | **$101,772** | Tax Year: | **2008** | Tax Exemption: | |
| Total Taxable Value: | | | | | |

## Information About Construction-Permanent Loan
## Key ARM with Option to Modify



### SunTrust Mortgage, Inc. - Wholesale

*This Information Statement describes the features of the construction-permanent mortgage program you are considering. It is intended to be used in conjunction with the applicable permanent loan disclosure(s).*

Loan Number: _____

Borrower(s): _____

_____

### What Is A Construction-Permanent Loan?

There are two phases to a construction-permanent loan. The first is the construction loan phase, which is in effect while your home is being constructed. During this time, SunTrust Mortgage, Inc. ("SunTrust") will make periodic disbursements of loan principal based on the amount of construction completed, and interest-only payments will be due on the amount disbursed. Upon completion of your home, and satisfaction of the conditions outlined in your loan documents, the loan will roll over into the permanent phase.

### Loan Term

The term of your construction-permanent loan will be based on the permanent loan product you select. The loan term will be inclusive of the construction phase.

### Construction Phase

The construction phase term will be based on the permanent ARM product you select, the lock-in options available and the time required to construct your home as determined by SunTrust. You must complete construction of your home and satisfy all conditions prior to the expiration of the construction phase in order for the loan to roll to the permanent phase. If you fail to meet these requirements the loan will become due and payable in full, or SunTrust may, at its sole option, approve an extension of the construction phase. If an extension is approved, you may be charged an extension fee in addition to any fees associated with re-pricing for an expired rate lock-in. SunTrust is under no obligation to approve an extension of the construction phase. You should work with SunTrust to agree on a construction phase that allows sufficient time for completion of your home and any unexpected delays.

### Loan Payments

During the construction phase you will make interest-only payments based on the outstanding principal balance of your loan. As your principal balance increases, so will your interest payments. You will receive an interest bill every month for the amount of interest due. Your construction phase payments will not include escrows for property tax and insurance renewals. Upon rollover of your loan to the permanent phase you will begin to make monthly payments in accordance with the terms of your Note, which will include escrows unless the requirement has been waived.

### Prepayment Fee

A Prepayment Penalty (or Prepayment Fee) provision imposes a charge if you pay off the mortgage loan before modification of the loan from the construction phase to the permanent phase. You are entitled to pay off the loan early; that is, before the modification date. However, if you pay off the balance of the loan before loan modification, you may be required to pay a Prepayment Penalty to SunTrust.

If you make a full Prepayment during the construction period prior to the permanent mortgage date then the amount of the Prepayment Penalty will be equal to the lesser of one percent (1%) of the original Note amount or the maximum amount allowable under state law as specifically described in the Prepayment Penalty (or Prepayment Fee) Addendum to the Note. Prepayment Penalty terms are often determined by state specific restrictions. You are encouraged to ask SunTrust about the specific Prepayment Penalty that may be applied to your loan.

### Construction Fees

There are fees typical on a construction loan that are required in addition to those on a permanent loan. These include the following:

* A construction administration fee to cover SunTrust's costs in performing construction disbursements.
* Inspection fees for each disbursement to verify the improvements completed are appropriate to the disbursement requested.
* Title run-down fees may be required in your market based on the local mechanics lien statutes.

### Construction Interest Rate

Your interest rate will be determined by SunTrust and will be the same rate as your Note rate based on SunTrust Mortgage, Inc.'s market rate for the construction-permanent loan product you choose on the day you lock in or a rate equal to SunTrust Bank's prime lending rate plus a margin. Details of the adjustable rate features are described in the ARM Disclosure presented to you at the time of loan application.



Exhibit_____

**Permanent Interest Rate**

You must lock in the permanent product, interest rate and construction term before closing. The term of your loan will be 15-30 years depending on the loan product selected. The loan term includes the construction phase and the permanent phase.

After the initial ARM interest rate period, the interest rate will be adjusted in accordance with the terms of your Note. Refer to the ARM Disclosure provided to you at application for details of the terms of your loan. Your permanent phase payments will be based on the type of ARM loan selected by you as follows:

Standard ARM, Fully Amortizing: After construction is complete and the loan rolls to the permanent phase, you will begin making monthly payments based on the terms of your Note and the number of months remaining in your loan at the time of rollover.

Standard ARM, Interest Only: You will pay interest only from the date of construction closing and for 10 years thereafter. Your interest will always be based on the outstanding principal balance. After the initial 10-year period, you will pay monthly principal and interest payments based on the remaining term.

Product Modification Option – You will also have an option to modify your loan from the ARM product to another eligible product when construction is completed and you have met any other requirements necessary for the permanent phase. To exercise the modification option you must: (i) notify your SunTrust Construction Loan Administrator in writing at least 30 days prior to the modification to the permanent phase, (ii) qualify for the new loan product and provide updated documentation if needed, (iii) execute a Modification Agreement changing the terms of the Note and Security Instrument, and (iv) pay all settlement fees associated with the modification including a modification fee if required. Refer to the Modification Requirements further on in this disclosure. A fee may be charged for the modification.

**Approval Requirements**

In addition to all documentation required for approval of the permanent loan phase, SunTrust may also require the information below in order to approve the construction phase of your loan.

1.  **Construction Plans and Specifications** – 1 or more complete sets signed and dated by Borrowers and your builder.
2.  **Construction Contract** – Fully executed copy with all addenda including Payment or Draw/Disbursement Schedule.
3.  **Lot Contract** – Or Deed if already owned.
4.  **Construction Cost Breakdown** – Required for all rehabilitation loans.
5.  **Builder Questionnaire Form** - Completed and signed by your builder and an officer of the construction firm.
6.  **Contractor's License** – Verification of your builder's business or professional license as required by the applicable jurisdiction.
7.  **Builder's References:** Bank, suppliers, sub-contractors and previous clients.

**Closing Requirements**

After your loan is approved, SunTrust must also receive and approve some or all of the following documents prior to closing your loan.

1.  Evidence that any applicable underwriting conditions have been satisfied, if applicable
2.  Title insurance binder
3.  Percolation/soil evaluation report
4.  Site plan/perimeter survey
5.  Copy of recorded declarations and restrictive covenants or architectural committee approval, if applicable
6.  Private road maintenance agreement, if applicable
7.  Hazard Insurance Coverage - The property must be insured by a builder's all risk insurance policy with a physical loss form endorsement, without co-insurance, in an amount equal to the lesser of 100% of the insurable value of the improvements (as determined by the property insurer) with replacement cost coverage of the improvements or the loan amount, with the standard conditions.
8.  Public Liability Insurance – Minimum $100,000 coverage for your builder.
9.  Flood Insurance Coverage - A completed application for flood insurance and proof the insurance premium has been paid if any portion of your home will be located in a zone certified as a flood plain.

**Fees Due at Closing**

Please refer to the **Estimate of Closing Costs** you will receive within three days of your loan application for a complete estimate of fees and closing costs. All fees will not be collected before or at the loan closing:

• inspection fees will either be collected at closing or billed for each draw, and
• escrows and fees associated with the final disbursements, modification or rollover of your loan to the permanent loan phase will be collected at the time of rollover.

**Disbursement of Funds (Draws)**

As construction progresses, SunTrust will make principal disbursements (draws). The amount disbursed will be determined by the percentage of the construction work completed since the last disbursement or in accordance with an approved draw schedule. The funds will be disbursed directly to you, your builder or jointly pursuant to a disbursement agreement signed by you at closing.

1.  **Request for funds.** You will need to call your SunTrust Construction Loan Administrator a minimum of five business days before the disbursement. SunTrust will order an inspection of the property and coordinate with the settlement agent to research the title prior to disbursement if required to extend the title insurance.
2.  **Property Inspection** – An inspection of the property will be completed to determine the percentage of completion.

3.  Title rundown - In certain localities an updated title search will be required prior to the disbursement of construction funds. The search is completed to verify that no mechanic's liens have been filed against your property and no other adverse conditions exist with regard to the property title. A mechanic's lien is filed when someone has supplied labor and/or material to a project and has not been paid within a specified time. The lien is filed to protect their rights for payment.

**First Draw – Additional Requirements**

The following conditions must be satisfied and documents received and approved prior to the first construction disbursement.

1.  All funds that you will contribute to the purchase and construction of the property must be paid before SunTrust will disburse any funds. You must supply receipts for any items purchased or paid for outside of the construction contract.
2.  Building Permits - Copies of all permits and other *applicable* governmental approvals to include septic/well permits.
3.  Footer and Foundation Survey. – Verifying the foundation of your home has been placed correctly on your lot without violating any easements or setback requirements.

**Final Draw - Additional Requirements**

Prior to release of the final draw the following conditions must be satisfied and documents received and approved.

1.  Final Billing from Builder – Verifying the amount of any cost over-runs or changes and the final balance due.
2.  Final Inspection- Verifying the improvements are 100% complete including driveways, sidewalks, grading and seeding.
3.  Certificate of Occupancy –A final unconditional certificate of occupancy issued by the applicable jurisdiction.
4.  Final Survey – Verifying that the completed improvements do not violate any easements or setback lines.
5.  Final Title Insurance Policy – With all endorsements.
6.  Homeowner's Insurance Policy - In an amount equal to the lesser of 100% of the insurable value of the improvements (as determined by the property insurer) with replacement cost coverage of the improvements or the loan amount, with the standard conditions.

**Rollover to the Permanent Phase**

Upon completion of construction and satisfaction of all requirements outlined in the loan documents for disbursement of the final draw and rollover to the permanent phase, the rollover will occur. To complete the rollover you must pay all fees not previously collected and may also be required to execute additional documents.

**Modification Requirements**

If you choose to modify to a different product at the end of your construction phase and you are approved for such modification, you will be required to execute a Modification Agreement changing the terms of your Security Instrument and Note at the time of modification to the permanent phase. You must return to the settlement agent's office for execution and recording of the new documents. SunTrust may charge a modification fee, and you will also be required to pay fees to record the Modification Agreement and any additional settlement fees associated with the modification.

**Fees Due at Modification or Rollover**

You must pay the following fees at the time your loan rolls over to the permanent loan phase.

- Construction interest due from the date of the last payment paid through the day prior to rollover.
- Permanent interest from the rollover date to the last day of the month.
- Escrow deposits for payment of future property taxes and insurance renewals unless escrows are waived. This would include escrow for mortgage insurance premiums if applicable.
- Discount points due to buy down your permanent rate.
- Modification fees plus recording fees (if applicable).
- Additional settlement fees (if applicable).
- Inspection or appraisal fees not previously paid.
- Survey or Title Endorsement fees not previously paid or due as a result of the modification.

**PLEASE READ THESE IMPORTANT NOTICES**

- SunTrust reserves the right to limit your construction disbursements to no more than once every 30 days or a total of five disbursements.
- No changes may be made to your builder selection, cost of construction, or plans and specifications after the loan has closed or a lending commitment has been issued without the prior written approval of SunTrust. SunTrust will not be obligated to approve any changes or to increase your loan amount to finance changes or cost over-runs.
- SunTrust will make periodic inspections of the property to ascertain the percentage of work completed. However, these inspections are for the sole purpose of determining the amount of funds to be disbursed and SunTrust's inspection of the property and determination to advance draws is not a warranty or representation as to the quality of work completed. **You are responsible for determining that both the progress and construction is satisfactory and meets all necessary requirements.**
- **The selection of the builder is up to you. SunTrust will review the information provided about your builder in evaluating your construction-permanent loan application. However, <u>SunTrust will not make a determination or provide any warranty that the builder you select is able to perform the work as contracted.</u>**

**This program disclosure is for informational purposes only. The circumstances of your loan, including applicable state law, may necessitate a change of these terms and conditions. In the event of any conflict between this disclosure and your Loan Agreement, Note and Security Instrument, the terms and conditions of your Loan Agreement, Note and Security Instrument will control.**

I hereby acknowledge receipt of this Information Statement:

| | | | |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Case 08-85264-mhm   Doc 78   Filed 12/21/09   Entered 12/22/09 15:37:17   Desc Main
Case 09-09075-mhm   Doc 1   Filed 10/16/09   Entered 10/19/09 16:14:09   Desc Main
Document   Page 17 of 52
Document   Page 38 of 72

SSS02297-
PS



# OLD REPUBLIC
**National Title Insurance Company**

Suite 450
1105 Lakewood Parkway
Alpharetta, GA 30004
**PHONE**   770-475-6199
**FAX**   770-475-3343
**TOLL FREE**   1-800-282-5972
*Home Office: Minneapolis, Minnesota 55401-2499*

October 6, 2009

Glenn Favre
6240 Lakeview Court
Rex, GA  30273

RE:   **Our Claim No.:**      **147602**
      Policy No.:            LTSF 826289
      Insured:              Suntrust Mortgage, Inc.
      Property:             6240 Lakeview Court, Rex, GA

Dear Mr. Favre:

We have completed our investigation of the above-referenced claim. The claim is described below:

      Claim Description:      You contacted our Company because you wanted to rescind your loan.

Our investigation reveals that you purchased the Property on February 12, 2004. According to our records, you did not purchase an owner's policy. You did not furnish us with a complete copy of the Settlement Statement but you should review Line 1110 on the second page of any copy you possess. If there is no payment for an owner's policy, we must reject your claim. The coverage provided by an owner's policy cannot be secured without a policy premium payment.

If you have any additional information which you believe we should consider, including a complete copy of your Settlement Statement, please provide us with such information within thirty (30) days of the date of this letter, and we will review this matter once again. Otherwise, we will consider this matter as concluded and close our claim file.

Sincerely,

*Lisa Brown*

Lisa C. Brown
Claims Manager
lbrown@oldrepublictitle.com

cc:      Ms. Paula Shamburger
        Ron Blithenthal, Esq.

COPY

## ACKNOWLEDGMENT

On this __1st__ day of June, 2009, before me personally came Norman Feit, known to me, who, being duly sworn by me, did depose and say that he is a Managing Director of Goldman, Sachs & Co., the entity described in the foregoing Assurance, and is duly authorized by Goldman, Sachs & Co. to execute the same, and that he signed his name in my presence by like authorization.

Notary Public
My commission expires:

Assurance of Discontinuance
Reviewed By:

NORMA A. GERALD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GE6192086
Qualified in Kings County
My Commission Expires August 15, 2012

*Attorneys for Goldman, Sachs & Co.*

Dated: June __1__, 2009

-19-

## SunTrust Approved Title Insurance Companies

**List**      SunTrust has approved the following list of title companies. Binders/policies received from companies which are not on our approved list must have the company approved by the Resource Center, prior to the loan closing.

| MLCS Code | Name |
|---|---|
| **Approved Title Companies** ||
| 01 | American Title Insurance Company |
| 02 | Chicago Title Insurance Company |
| 03 | Commonwealth Land Title Insurance Company |
| 04 | Conestoga Title Insurance Company |
| 05 | Connecticut Attorneys Title Insurance Company |
| 06 | Fidelity National Title Insurance Company of California |
| 07 | Fidelity National Title Insurance Co. of New York (formerly Security Title and Gty Co., NY, NY) |
| 08 | Fidelity National Title Insurance Co. of Pennsylvania (formerly Meridian Title Insurance Company) |
| 09 | Fidelity National Insurance Company of Tennessee |
| 10 | First American Title Insurance Company |
| 11 | Industrial Valley Title Insurance Company |
| 12 | Investors Title Insurance Company |
| 13 | Jefferson-Pilot Title Insurance Company |
| 14 | Lawyers Title Insurance Corporation |
| 15 | Mortgage Guarantee and Title Company; Providence, Rhode Island |
| 16 | National Land Title Insurance Company |
| 17 | Nations Title Insurance of New York, Inc. |
| 18 | Old Republic National Title Insurance Company |
| 19 | Security Title Guarantee Corporation of Baltimore |
| 20 | Security Union Title Insurance Company |
| 21 | South Carolina Title Insurance Company |
| 22 | Southern Title Insurance Company |
| 23 | Stewart Title Guaranty Company |
| 24 | T.A. Title Insurance Company |
| 25 | Ticor Title Insurance Company |
| 26 | TransAmerica Title Insurance Company |
| 27 | United General Title Insurance Company |
| 28 | American Pioneer Title Insurance Company |
| 29 | Alliance Title of America Inc. (FL) |
| 30 | United Title Insurance Co. (CA) |
| 31 | Washington Title Insurance Co. (NY) |
| 32 | Westcor Land Title Insurance Co. (CA) |
| 33 | National Title Insurance of New York, Inc. |
| 34 | Commerce Title Insurance Company (CA) |
| 35 | Attorneys' Title Insurance Fund (FL) |
| 36 | Dakota Homestead Title Insurance Company (SD) |
| 37 | Censtar Title Insurance Company (TX) |
| 38 | American Eagle Title Insurance Co. (OK) |
| 50 | Guarantee Title and Trust |

*Continued on next page*



**SUNTRUST**
MORTGAGE



## FIDELITY
### NATIONAL TITLE GROUP

Home   About FNTG   Title Insurance   More Services   Find An Office   Careers   Contact Us

## Welcome to Fidelity National Title Group

**Fidelity National Title Group** (NYSE: FNF) is the nation's largest provider of title insurance and escrow services. The respected title insurance underwriters that comprise Fidelity National Title Group issue approximately half of the residential and commercial title insurance policies in the United States. We also facilitate real estate transactions around the world through FNF Title International. Fidelity National Title Group's leading title brands and related services include:

### Title Insurance


**Aero Records & Title Co.**




CHICAGO TITLE INSURANCE COMPANY













### International Title Insurance



*Florida Title now*
*alpha Omega. reinsure*

### More Services








EXHIBIT · 6 ·

### NEWS

**6/2/2009**
Fidelity National Financial, Inc. to Present at Stephens, Inc. Spring Investment Conference

**5/14/2009**
Fidelity National Financial, Inc. Announces Acquistion of LoanCare Servicing Center, Inc.

**4/27/2009**
Fidelity National Financial, Inc. Reports First Quarter 2009 EPS of ($0.06)

**More News...**
**Earnings News...**

### FNF STOCK

**$13.44** (NYSE: FNF)

### NOTICES

Central Florida – Affiliated Agency Settlement

Multi-State Captive Reinsurance Settlement

BEWARE: Unauthorized Escrow Websites

Compliance Notification to All Employees and Agents

**Fidelity National Rate Calculator:** 

Use this Rate Calculator to get a free estimate on your next transaction.

*Old Republic*

## FACSIMILE TRANSMITTAL SHEET

| TO: Mr. Jose Aponte | FROM: Allen Scott Bennett |
|---|---|
| COMPANY: SunTrust | DATE: 4/4/2008 |
| FAX NUMBER: 804 675-9741 | TOTAL NO. OF PAGES INCLUDING COVER: 2 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: Missing Documents | YOUR REFERENCE NUMBER: |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

April 1, 2008

Mr. Jose Aponte
Corporate Counsel
SunTrust Bank

Obligor Numbers:  0031366248 and 0680081287

Mr. Aponte,

I've sent by certified letter a request for the Disbursement Authorization, Escrow Checking
Account Waiver, SunTrust Approved Appraisers List, Form BRO 0376 Borrower Construction
Permanent Loan Questionnaire, any Construction Draw Inspection Reports (I only have the
distribution report with no approvals) and any and all Lien Waivers conducted prior to each draw
conducted by SunTrust CP Department.  The request was sent to Linda Roddenberry, Rich Willits
and Paige Whaley on March 12, 2008.  Per the US Postal service, all request were received a
day or two later and to date I have not received any of the requested documents.

Rich Willits, Paige Whaley and former Mortgage Originator Alicia Chuck have "consistently and
repeatedly" violated TILA and RESNA as they all mortgage documents contain the same
irregularities, signed blank documents by their POA and Builder Andre Keith Sanders i.e. Urban
Craftsman Homes of Florida and all originated by Alicia Chuck, and fake SunTrust forms or
Letters to Modify or Extend loans originated and signed in 2005 and disbursement of funds
without the borrowers signatures and no Draw Constructions or Inspections on file, or Lien
Waivers.

[CLICK HERE AND TYPE RETURN ADDRESS]

Exhibit ___

The failure of SunTrust Mortgage to respond to a borrowers request for documents, maintain signatures and files violate federal and state regulations regarding disclosures and could suffer sanctions for violating the TILA, Reg. Z and RESPA. The Federal Reserve Board governs SunTrust Mortgage, I am coping this letter with documentation supporting my claim and request for an investigation into my mortgage as all to resolve this matter have gone unanswered.   Also, a letter with supporting documentation is being sent to Latasha Rose at Georgia's Banking and Finance Division.

To add injury to insult and duress, Rich Willits and Paige Whaley have called or accelerated the loans due intimidating borrowers who have met the terms and conditions of their loan, kept their interest payments current (until the fraud was discovered and reported) and provided some with a letter dated 11 February 2008 to again extend or modify their loans for $500 fees that has already been reported as fraud.

Loans executed in 2005 and modified or extended without approval or knowledge of the borrowers for over three years without regards to the terms and conditions of your loans, SunTrust has now forfeited its interest in it Security Interest Deed in the property used to secure these loans.

By this fax and certified letter (to follow) to SunTrust Mortgage, Fidelity National Title Co., I am formally notifying SunTrust Mortgage to rescind my mortgage and convey a free and clear title to me.  You have 20 days to respond and 60 days to file the release and title with the county clerk of courts in order for me not to not take legal action against SunTrust Mortgage.

Regards,

A. Scott Bennett
1530 Northwold Drive
Atlanta, GA 30350

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
GENERAL CIVIL DIVISION



**SUNTRUST**    Official Check    5732440956

Purchaser Glen Favre                1/28/2006    DGFH1    2409

PAY    THE SUM 793    $ 793.28********

Glen Favre

SunTrust Banks, Inc. by its Authorized Agent
SunTrust Bank

To The
M
of

Payable at SunTrust Bank

⑃5732440956⑃ ⑆061100790⑆ 70190199996⑈

SunTrust Bank
Mail Code GA - GAINESVILLE - 2410
Post Office Box 4418
Atlanta GA 30302-4418

TRUST

Glen Favre,
110 S. Columbia Dr.
Unit 11
Decatur, GA 30030

3003035315 C007

Exhibit '6'

88.

EXHIBIT C

Glenn R Favre
110 South Columbia Drive #11
Decatur, Georgia 30030
January 28, 2008

Andre Keith Sanders
Owner
Urban Craftsman Homes of Florida, LLC
5122 31st Avenue South
Gulfport, Florida 33707

Mr. Sanders:

This letter serves as my notice to you, that your services are no longer needed for the construction of the house located at 1816 15th Avenue Ybor City, Florida; 1914 Columbus Ave, Ybor City; and Lot 14 Essex Avenue Gulfport, Florida. This notice is the result of the following:

- Diligence – construction of the house in excess of 30 months

- Discharge of Liens – Liens placed on the properties failure to pay the bills associated with the construction the house by Cox Lumber, Stock Building Supply, Rojas Construction, Red Bull Concrete, Inc. Residential Drywall, Inc.  .

- Abandonment or Delays of Construction – failure to obtain Certificate of Occupancy for the construction of the house.

- Miss appropriation of funds from loans obtained by you in my name and that of John Stokes from SunTrust Bank.

- The unauthorized charges placed on my American Express, processed through your company for cash in the sum of $10,000.00 on December 11, 2007.

- Charges in excess of $5,000.00 to Lowes Home improvement, monies need to be returned immediately.

- Conflict of interest – you acting as my counsel when your non disclosure of your biological brother acting as the general contractor.

Stop work immediately on this property.  I require an accurate accounting of all monies paid to you, your company and that of your family members by Suntrust Bank, Scott Bennett, John Stokes and me for the construction of all three houses.

Glenn R Favre

cc: John A. Stokes, Scott Bennett

**B6G (Official Form 6G) (12/07)**

In re GLENN ROYCE FAVRE
_____ ,          Case No. 08-85264-MHM
                                                    _____
          **Debtor**                                        **(if known)**

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

   Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| FAALLEN SCOTT BENNETT 33%<br>GLENN ROYCE FAVRE 33%<br>JOHN A STOKES 33% | FAVRE & BENNETT, LLC 100%<br>LOT 14 ESSEX CONSTRUCTION LOAN<br>NON RESIDENTIAL FL CONTRACT<br>SUNTRUST BANK, MORTGAGE |
| GLENN ROYCE FAVRE 50%<br>SCOTT ALLEN BENNETT 50%<br>TITLED TO DEBTOR | FAVRE & BENNETT, LLC 100%<br>1914 COLUMBUS DR<br>NON-RESIDENTIAL FL CONTRACT<br>SUNTRUST BANK, INC. SUNTRUST MORTGAGE. |
| ALLEN SCOTT BENNETT 33%<br>GLENN ROYCE FAVRE 33%<br>JOHN STOKES 33% | FAVRE & BENNETT, LLC 100%<br>1816 15TH AVENUE CONSTRUCTION LOAN<br>NON-RESIDENTIAL FLORIDA CONTRACT<br>SUNTRUST BANK, INC. SUNTRUST MORTGAGE |
| GLENN ROYCE FAVRE PRIMARY RESIDENCE<br>TITLED TO DEBTOR | 6240 LAKE VIEWCOURT<br>REX GA<br>SUNTRUST MORTGAGE, OLD REPUBLIC |
| | |
| | |

American LegalNet, Inc.
www.FormsWorkflow.com

**IT IS ORDERED as set forth below:**

**Date: March 03, 2009**

_____
Margaret H. Murphy
U.S. Bankruptcy Court Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                    :        CASE NO.  08-85264-MHM
                                          :
GLEN ROYCE FAVRE,                         :        CHAPTER 7
                                          :
               Debtor.                    :
_____:

### ORDER APPROVING EMPLOYMENT OF ATTORNEYS

S. Gregory Hays, Chapter 7 Trustee, filed March 3, 2009, an application for approval of

employment of Lamberth, Cifelli, Stokes, Ellis & Nason, P.A., 3343 Peachtree Road NE, Suite

550, Atlanta, Georgia 30326-1022 (the "Firm") as counsel for Trustee and the estate (Doc. No. 17).

The Firm of attorneys are qualified to represent Trustee in this case, represent no interest adverse to

Debtor or the estate in the matters upon which they are to be engaged, and their employment is

necessary and is in the best interests of the estate. Accordingly, it is hereby

**ORDERED** that the employment by Trustee of Lamberth, Cifelli, Stokes, Ellis &

Nason, P.A., is authorized and approved for the purposes specified in said Application.  No

matters in which the firm is to be engaged, and are well qualified to represent Applicant. Attorneys with the Firm anticipate seeking reasonable compensation based upon their normal hourly rate(s) and upon other recognized factors. No compensation will be paid by Applicant to said Firm except upon application to and approval by the Bankruptcy Court after notice and hearing as required by law.

5.    To the best of Applicant's knowledge, the Firm represents no interest adverse to Applicant, Debtor, or this estate in the matters upon which it is to be engaged, and said attorneys are disinterested persons under 11 U.S.C. §101(14) with regard to the matters upon which they are to be engaged, and the Firm's appointment will be in the best interests of this estate, the Debtor, creditors, and other parties in interest.

WHEREFORE, Applicant prays for authority to retain and employ the Mueller Law Firm, LLC, in this case for the purposes specified herein above, and that Applicant have such other and further relief as may be just and proper.

This ___ day of March, 2009.

_/s/ S. Gregory Hays_____
S. Gregory Hays
Chapter 7 Trustee

Hays Financial Consulting, LLC
3343 Peachtree Road, Suite 200
Atlanta, GA 30326
(404) 926-0060

## PRELIMINARY STATEMENT

Old Republic, by special limited appearance, seeks dismissal of the Adversary Complaint. Old Republic, through counsel, submits that the Court should dismiss this adversary action on the grounds, *inter alia,* that (i) Mr. Favre has failed to properly serve Old Republic with Summons and a copy of the Complaint as required by FED. R. CIV. P. 4 and FED. R. BANKR. P. 7004; (ii) the Court has no personal jurisdiction over Old Republic; (iii) the Court lacks subject matter jurisdiction over the claim(s) at issue in this adversary proceeding; and (iv) the Adversary Complaint fails to state any claim whatsoever against Old Republic upon which relief can be granted.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Upon information and belief, this Court is familiar with the facts relevant to Old Republic's Motion, as these facts have been set forth previously in numerous motions and briefs filed in the underlying (now closed and discharged) Chapter 7 Bankruptcy Case filed by the Plaintiff on or about December 9, 2008. [*In re: Glenn Royce Favre*; Case No. 08-85264 (Bankr. N.D. Ga. April 7, 2009) (hereinafter, the "Bankruptcy Case")]. In the interest of judicial economy and the Court's time and

2

resources, Old Republic, through counsel, submits the following pertinent facts and procedural history in support of its Motion for this honorable Court's consideration.[1]

This adversary proceeding apparently arises from Mr. Favre's attempt to rescind his mortgage loan. On or about February 12, 2004, Legacy Communities of Ellenwood Park, L.L.C. transferred the real property more commonly known as 6240 Lakeview Court, Rex, Clayton County, Georgia and the improvements located thereon (hereinafter, the "subject property" or, alternatively, the "Property"), to Glenn Favre (a/k/a Glenn Royce Favre, a/k/a Glenn R. Favre), the Claimant/Plaintiff in the above-captioned adversary proceeding (hereinafter, "Mr. Favre" or, alternatively, the "Plaintiff" or the "Debtor"), for value via a Warranty Deed of same date (hereinafter, the "Warranty Deed"). The Warranty Deed was filed and recorded on March 15, 2004 in Deed Book 7374, Page 152, Clayton County,

---

[1] For purposes of the instant Rule 12(b)(6) Motion, well-pleaded factual allegations of the Adversary Complaint must be accepted as true. FED. R. CIV. P. 12(b) and FED. R. BANKR. P. 7012(b). Old Republic, through counsel, summarizes the allegations relevant to the Motion to Dismiss in this section. However, the allegations, as summarized herein, are assumed to be true *solely* for purposes of this Motion, and their recitation herein should not be deemed to be an admission by Old Republic.

Georgia Records.[2]  Mr. Favre obtained a purchase money loan from loan from

SunTrust Mortgage, Inc. d/b/a Sun America Mortgage Corporation (hereinafter,

"SunTrust Mortgage") in the amount of One Hundred Nineteen Thousand Six

Hundred Dollars ($119,600.00) (hereinafter, the "financing transaction" or,

alternatively, the "Loan"). *Please see* Debtor's Voluntary Petition [Bankr. Docket No.

1], Schedule A – Real Property, Schedule C – Property Claimed as Exempt, Schedule

D – Creditors Holding Secured Claims, and Chapter 7 Individual Debtor's Statement

of Intention.

To evidence this financing transaction, Mr. Favre executed and delivered to

SunTrust Mortgage an Adjustable Rate Note, dated February 12, 2004, in the original

principal amount of One Hundred Nineteen Thousand Six Hundred Dollars

($119,600.00) (hereinafter, the "Note").[3]  Mr. Favre also executed and delivered a

Security Deed, dated February 12, 2004, conveying the Property to Mortgage

---

[2] A court may take judicial notice of public records in considering a motion
to dismiss. *See* Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999),
*rev'd and remanded on other grounds* Bryant v. Dupre, 252 F.3d 1161 (11th Cir.
2001). *See also* Stahl v. U.S. Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003)
("The district court may take judicial notice of public records and may thus
consider them on a motion to dismiss.").

[3] Mr. Favre was represented at the closing on February 12, 2004 by Loretta
Favre, acting under Limited Power of Attorney, as Mr. Favre's attorney in fact for
the financing transaction.  This Limited Power of Attorney was filed and
recorded on March 15, 2004 in Deed Book 7374, Pages 153-154, Clayton County,
Georgia Records.

Electronic Registration Systems, Inc. ("MERS"), acting solely as Nominee for the Lender [SunTrust Mortgage] to secure repayment of the Loan (hereinafter, the "Security Deed"). The Security Deed was filed and recorded on March 15, 2004 in Deed Book 7374, Pages 155-177, Clayton County, Georgia Records.

Also in connection with the financing transaction, Old Republic issued the Lender [SunTrust Mortgage] a policy of insurance on the title to the Property (hereinafter, the "Lender's Policy"). Old Republic also issued the Borrower [Mr. Favre] a policy of insurance on the title to the subject property (hereinafter, the "Owner's Policy").

Upon information and belief, the Note and Security Deed were subsequently transferred and assigned to The Bank of New York Mellon, and the Loan is/was being serviced by America's Servicing Company. *Please see* Debtor's Voluntary Petition, *supra.*, Schedule D – Creditors Holding Secured Claims, and Chapter 7 Individual Debtor's Statement of Intention. Although Mr. Favre reaffirmed the debt owed and secured by the Property (Id.), he subsequently defaulted on the Loan and, upon information and belief, the Property was in the process of foreclosure and may, in fact, have been foreclosed.

Mr. Favre filed the instant adversary proceeding in the *closed* Bankruptcy Case on October 14, 2009.[4]

## ARGUMENT AND SUPPORTING AUTHORITY

Initially, Old Republic submits that Mr. Favre lacks standing to raise the claims asserted in this adversary proceeding given the close of his Chapter 7 Bankruptcy Case, the closing of the bankruptcy estate, and Mr. Favre's discharge on April 7, 2009.

Notwithstanding the foregoing, the Adversary Complaint sets forth, in addition to a vague claim for rescission, a series of incomprehensible allegations and assertions against Old Republic for conspiracy, fraud, and for violations of, *inter alia*, the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"); Regulation Z, 12 C.F.R. §§ 226.1 *et seq.* ("Reg. Z"); and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"). Mr. Favre, who is appearing *pro se*, also seeks to recover actual and statutory damages, damages for his purported pain and suffering, attorney fees, and court costs pursuant to the named Defendant's alleged violation(s).

---

[4] This case is one of *nine (9)* adversary proceedings filed by Mr. Favre *after* the close of the Bankruptcy Case, the closing of the bankruptcy estate, and the Debtor's discharge on April 7, 2009. *Please see* Order Discharging the Debtor [Mr. Favre] and Closing the Estate, entered April 7, 2009 (hereinafter, the "Discharge Order"). [Bankr. Docket No. 30]. Seven (7) of these adversary proceedings, includng the matter at bar, were filed within a three (3)-day period.

6

Although Mr. Favre has failed to properly serve Old Republic in this adversary action and, thus, this matter is subject to dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), and Federal Rules of Bankruptcy Procedure 7012(b)(2) and 7012(b)(5)[5], the Court does not need to reach that issue in its consideration of the present Motion. As shown below, Mr. Favre has failed to state any cause of action against Old Republic upon which relief may be granted. Accordingly, Old Republic submits that this Court should dismiss all claims raised by the Plaintiff against Old Republic in this adversary proceeding.

## A.    THE STANDARD FOR DISMISSAL.

Federal Rule of Civil Procedure 12(b)(6), made applicable in adversary proceedings by Federal of Bankruptcy Procedure 7012(b)(6), provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted if it appears that the plaintiff can prove no set of facts in support of the claim(s) entitling the plaintiff to relief. Haines v. Kerner, 404 U.S. 519 (1975); Conley v. Gibson, 351 U.S. 41 (1957). "[The Court] accept[s] as true the allegations in Plaintiff's complaint, and construe[s] the facts in the light most favorable to the Plaintiff." Neal v. Fulton County Board of Eduction, 229 F.3d 1069, 1072 (11th Cir.

---

[5] Old Republic, through counsel, specifically reserves the right to raise the affirmative defense(s) of, *inter alia*, lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process at a later date.

7

2000) [Cit. omitted.].  As shown below, Old Republic owes no duty whatsoever to

Mr. Favre arising from the financing transaction which is the subject of the instant

adversary proceeding.

### B.      THE ADVERSARY COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) AND FED. R. BANKR. P. 7012(b)(6).

The Complaint in this adversary proceeding, on its face, fails to state a

comprehensible claim against Old Republic upon which relief can be granted and,

therefore, the Adversary Complaint should be dismissed. FED. R. CIV. P. 12(b)(6) and

FED. R. BANKR. P. 7012(b)(6).  It is appropriate to dismiss a case pursuant to Federal

Rule of Civil Procedure 12(b)(6) if it is clear "beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."

Conley, 355 U.S. 41, 45-46.  *See also* Williams v. Alabama State Univ., 102 F.3d 1179,

1182 (11th Cir. 1997) ("In deciding whether the complaint states a claim [the Court]

accept[s] all well-pleaded facts in the complaint as true and draw[s] all inferences

in the plaintiff's favor."); Miccosukee Tribe of Indians of Fla. v. So. Everglades

Restoration Alliance, 304 F.3d 1076, 1084 (11th Cir. 2002) (Any ambiguities are

construed in the plaintiff's favor.).  Where, as here, a litigant is proceeding *pro se,* the

Court must also be guided by the principle that a "document filed *pro se* is 'to be

liberally construed,' ... , and 'a *pro se* complaint, however inartfully pleaded, must

8

be held to less stringent standards than formal pleadings drafted by lawyers.'"

Erikson v. Pardus, 551 U.S. 89 (2007), *quoting* Estelle v. Gamble, 429 U.S. 97, 106

(1976); *see also* Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000)

(Discussing that *pro se* filings are entitled to liberal construction). Nevertheless,

"conclusory allegations and unwarranted deductions of fact are not admitted as true

in a motion to dismiss." Farrell v. Time Service, Inc., 178 F. Supp. 2d 1295 (N.D. Ga.

2001) (Citations omitted).

Further, the Federal Rules of Civil Procedure and the Federal Rules of

Bankrutpcy Procedure require that a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P.

8(a)(2) and FED. R. BANKR. P. 7008(a)(2). "[A] pleading [cannot] survive dismissal

when it consist[s] of only the barest of conclusory allegations without notice of the

factual grounds on which they purport to be based." Jackson v. BellSouth

Telecomm., 372 F.3d 1250, 1271 (11th Cir. 2004). While the complaint need not

provide detailed factual allegations, it must give sufficient factual allegations "to

raise a right to relief above the *speculative* level"; that is, the complaint must give

"only enough facts to state a claim to relief that is *plausible on its face*." Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 570 (2007) (Emphasis added). Thus,

"[w]ithout some factual allegation in the complaint, it is hard to see how a claimant

could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. at 556, n.3.

In the adversary action at bar, Mr. Favre has not set forth in the Complaint any specific *factual* allegation(s) with respect to alleged wrongdoing by Old Republic, nor can any construction of the Complaint support a cause of action against the named Defendant herein. Rather, the Adversary Complaint sets forth a series of vague claims, incomprehensible allegations, and assertions against, *inter alia*, Old Republic that, on its face, fails to state a claim under Twombly, *supra.*, and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Moreover, Mr. Favre is "confused" as to any duty owed him by Old Republic in defense of the pending foreclosure of the Property at issue in this adversary proceeding. Old Republic owes no duty to Mr. Favre in this regard. Obviously, such unsubstantiated allegations are insufficient to support a claim against Old Republic, and dismissal of the Complaint in the above-captioned adversary proceeding is both appropriate and warranted.

**C.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 8 AND FED. R. BANKR. P. 7008.**

Federal Rule of Civil Procedure 8 is applicable in adversary proceedings. FED. R. BANKR. P. 7008. As noted above (*please see* Section B, *supra.*), a complaint in an adversary proceeding must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) and FED. R.

10

BANKR. P. 7008(a)(2).  Further, a pleading which sets forth a claim for relief must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends [...]."  FED. R. CIV. P. 8(a)(1) and FED. R. BANKR. P. 7008(a)(1). Finally, a complaint must contain "a demand for judgment for the relief the the pleader seeks." FED. R. CIV. P. 8(a)(3) and FED. R. BANKR. P. 7008(a)(3).

While "[a]ny concise statement identifying the remedies and the parties against whom relief is sought" is sufficient to meet the requirements of Federal Rule of Civil Procedure 8, compliance with the rule is necessary. *See* <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1161 (11th Cir. 1993).  The court in <u>Goldsmith</u> found that, notwithstanding the "wide latitude generally afforded pro se litigants", the plaintiff's complaint was insufficient to support a civil action where the pro se plaintiff failed to include a concise statement identifying the remedies and the parties against whom relief is sought. <u>Id</u>.

Notwithstanding Mr. Favre's failure to state a cognizable claim against Old Republic upon which relief can be granted (*see* Section B, *supra*), the Complaint in the instant adversary action fails to set forth the grounds upon which this Court's jurisdiction depends.  FED. R. CIV. P. 8(a)(1) and FED. R. BANKR. P. 7008(a)(1).  Nor does the Adversary Complaint in this action identiy the remedy(ies) sought from Old Republic in comportment with Federal Rule of Civil Procedure 8(a)(3) and

11

Federal Rule of Bankruptcy Procedure 7008(a)(3). The Complaint herein further fails

to demand judgment. FED. R. CIV. P. 8(a)(3) and FED. R. BANKR. P. 7008(a)(3). As

such, the Adversary Complaint in the case at bar completely fails to meet the

minimum requirements of a pleading. FED. R. CIV. P. 8 and FED. R. BANKR. P. 7008.

Accordingly, the Complaint, and this adversary proceeding, should be dismissed.

### D. THE ADVERSARY COMPLAINT SHOULD BE DISMISSED UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(5), AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 7012(b)(2) AND 7012(b)(5).

Federal Rule of Civil Procedure Rule 4 and Federal Rule of Bankruptcy

Procedure 4 set out the specific requirements for service of a summons and a copy

of the complaint[6] upon a defendant. FED. R. CIV. P. 4(e) and FED. R. BANKR. P. 4(e).

The serving party (Mr. Favre in the present adversary matter) bears the burden of

proof with regard to its (his) validity or good cause for failure to effect timely

service. <u>Aetna Business Credit v. Universal Decor & Interior Design</u>, 635 F.2d 434,

---

[6] Old Republic respectfully requests the Court take judicial notice of the fact, as noted previously, that purported Plaintiffs Bernice and Darryll Griffin, John A. Stokes and Dale Capelouto failed to sign the initial pleading in the adversary matter at bar in clear violation of Federal Rule of Civil Procedure 11, made applicable in adversary proceedings, and, as such, this Court has the ability to strike the Complaint in its entirety. FED. R. CIV. P. 11(a) ("Every pleading, written motion, and other paper *must be signed ... by a party personally* if the party is unrepresented. The paper must state the signer's address, email address, and telephone number") (Emphasis added).

435 (5th Cir. 1981)[7]; Profit v. Americold Logistics, LLC, 248 F.R.D. 293, 296 (N.D. Ga.

2008); see also Systems Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th

Cir. 1990).

As stated in detail above, the Adversary Complaint in the case at bar fails to

identify any purported relationship between any Old Republic related entity and the

Plaintiff. Furthermore, no Old Republic entity was a party to the underlying

Bankruptcy Case. Service of the Complaint in this adversary proceeding was

purportedly mailed to Old Republic; however, Old Republic submits that Mr. Favre

has failed to meet the burden incumbent upon him to properly serve Old Republic

in the instant adversary action.

Where, as here, the plaintiff has failed to properly serve the defendant(s),[8] this

Court lacks personal jurisdiction over Old Republic and this adversary proceeding

is subject to dismissal. FED. R. CIV. P. 12(b)(2) and 12(b)(5), and FED. R. BANKR. P.

7012(b)(2) and 7012(b)(5). Given the fact that Mr. Favre has failed to properly serve

the named Defendant in the matter at bar, Old Republic submits that the Adversary

---

[7] The Eleventh Circuit adopted as binding precedent all of the decisions of
the former Fifth Circuit handed down prior to the close of business on September
30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[8] "Service of process is a jurisdictional requirement: a court lacks
jurisdiction over the person of a defendant when that defendant has not been
served." Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990).

Complaint must be dismissed because this Court lacks personal jurisdiction over Old Republic and, as such, the Court is without the means by which to adjudicate the alleged claim(s) presented in the Complaint.

## **CONCLUSION**

The initial pleading filed in the instant litigation is both unintelligible and incomprehensible as well as, in many instances, nonsensical. Consequently, it is virtually impossible to discern from this pleading any violation(s) of law which could be deemed cognizable and which would warrant the equally vague remedies Mr. Favre apparently seeks. Old Republic, by and and through counsel and preserving all defenses, respectfully submits that the Complaint in this adversary proceeding fails to state any claim upon which relief can be granted and, accordingly, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b)(6).

For all the foregoing reasons, OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY. respectfully requests that this Court grant its Motion to Dismiss and enter an Order dismissing all of Mr. Favre's claims against Old Republic with prejudice, casting all costs against Mr. Favre.

14

Respectfully submitted this 16th day of November, 2009.

DICKENSON GILROY LLC


/s/    Monica K. Gilroy
MONICA K. GILROY
Georgia Bar No. 427520
**Attorney for Old Republic National Title
Insurance Company**

Corporate Office
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
Tel:  (678) 280-1922
Fax: (678) 280-1923
Email: Monica.Gilroy@dickensongilroy.com

15

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and that, in accordance with BLR 5005-5 (Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing *Old Republic National Title Insurance Company's's Memorandum of Law in Support of its Motion to Dismiss Adversary Proceeding for Failure to State a Claim Upon Which Relief Can be Granted* in the above-captioned adversary proceeding with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record in this matter, and, further, that I have served the Plaintiff, appearing *pro se,* with a copy of this pleading by placing a true and correct copy of same in the United States Mail, with first-class postage affixed thereto, properly addressed as follows:

Glenn Royce Favre
110 S. Columbia Drive #11
Decatur, Georgia 30030

This 16th day of November, 2009.

/s/  Monica K. Gilroy
MONICA K. GILROY
(Georgia Bar No. 427520)
**Counsel for Old Republic National Title Insurance Company**

DICKENSON GILROY LLC
Corporate Office
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
Tel:  (678) 280-1922
Fax: (678) 280-1923
Email: Monica.Gilroy@dickensongilroy.com

16

**08-85264-mhm** Glenn Royce Favre
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Margaret Murphy
**Date filed:** 12/09/2008 **Date of last filing:** 12/19/2009
**Debtor discharged:** 04/07/2009
**Date terminated:** 04/07/2009

# Attorneys

**H. Tucker Dewey**
HALE DEWEY & KNIGHT
88 Union Avenue
Suite 700
Memphis, TN 38103     representing     **BMW Financial Services NA, LLC**
901-271-0712                                   *(Creditor)*
901-271-0900 (fax)
kray@haledewey.com
*Assigned: 02/27/2009*

**Monica K. Gilroy**                              **SunTrust Mortgage, Inc.**
Dickenson Gilroy LLC                 c/o Dickenson Gilroy LLC
Corporate Office - Suite 140        Attention: Monica K. Gilroy, Esq.
3780 Mansell Road                   Corporate Office
Alpharetta, GA 30022               3780 Mansell Road, Suite 140
678-280-1922         representing     Alpharetta, GA 30022
(678) 280-1923 (fax)                678-280-1922
mkg@dgllclaw.com                    678-280-1923 (fax)
*Assigned: 01/20/2009*               Monica.Gilroy@dickensongilroy.com
                                          *(Creditor)*

**Angela Little Hamilton**
Angela Little Hamilton
543 E. Lanier Avenue                **Glenn Royce Favre**
Fayetteville, GA 30214            110 South Columbia Drive
(770) 716-0140        representing     #11
(770) 716-0640 (fax)               Decatur, GA 30030
angelalham@yahoo.com           *(Debtor)*
*Assigned: 12/09/2008*
*LEAD ATTORNEY*

**S. Gregory Hays**                              **S. Gregory Hays**
Hays Financial Consulting,           Hays Financial Consulting, LLC
LLC                                     Suite 200
Suite 200         representing     3343 Peachtree Road, NE
3343 Peachtree Road, NE           Atlanta, GA 30326-1420
Atlanta, GA 30326-1420          (404) 926-0060

(404) 926-0060
(404) 926-0055 (fax)
ghays@haysconsulting.net
*Assigned: 03/09/2009*
*ATTORNEY TO BE*
*NOTICED*

**Ronald A. Levine**
Levine, Block & Strickland,
LLP
Suite 240 - Centrum at
Glenridge
780 Johnson Ferry Road
Atlanta, GA 30342
(404) 231-4567
info@lbslaw.net
*Assigned: 01/26/2009*

**Frederick L. Mouser**
1032 9th Street North (MLK)
St. Petersburg, FL 33705
*Assigned: 12/22/2008*
*LEAD ATTORNEY*

**Sean R. Quirk**
Shapiro & Swertfeger
Duke Building - Suite 100
2872 Woodcock Boulevard
Atlanta, GA 30341-3941
770-220-2535
seanq.ga@logs.com
*Assigned: 04/02/2009*

**Peter J. Ross**
Tower Place 100
Suite 1530
3340 Peachtree Road, N.E.
Atlanta, GA 30326
*Assigned: 03/18/2009*
*LEAD ATTORNEY*

ghays@haysconsulting.net
*(Trustee)*

representing

**Ford Motor Credit Company, LLC, a Delaware
Limited Liability Company**
Levine, Block & Strickland, L.L.P
2270 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, GA 30326
*(Creditor)*

representing

**Cox Lumber Co., a Florida Corp., d/b/a HD Supply
Lumber & Building Materials**
c/o Frederick L. Mouser
1032 9th Street North (MLK)
St. Petersburg, FL 33705
*(Creditor)*

representing

**AMERICA'S SERVICING COMPANY**
SHAPIRO & SWERTFEGER
2872 WOODCOCK BOULEVARD
SUITE 100
ATLANTA, GA 30341
*(Creditor)*

representing

**Kamran Gulfraz**
c/o Peter J. Ross
Tower Place 100, Suite 1530
3340 Peachtree Road, N.E.
Atlanta, GA 30326
*(Creditor)*

**Syed Hussain**
c/o Peter J. Ross
Tower Place 100, Suite 1530
3340 Peachtree Road, N.E.
Atlanta, GA 30326
*(Creditor)*

**Kandace C. Stewart**
HALE DEWEY & KNIGHT
88 Union Avenue
Suite 700
Memphis, TN 38103                    representing    **BMW Financial Services NA, LLC**
901-271-0712                                          *(Creditor)*
901-271-0900 (fax)
kstewart@haledewey.com
*Assigned: 01/06/2009*

**A. Alexander Teel**                                 **S. Gregory Hays**
Lamberth, Cifelli, Stokes, Ellis                      Hays Financial Consulting, LLC
& Nason                                               Suite 200
East Tower, Suite 550                                 3343 Peachtree Road, NE
3343 Peachtree Road, NE          representing         Atlanta, GA 30326-1420
Atlanta, GA 30326-1022                                (404) 926-0060
404-262-7373                                          ghays@haysconsulting.net
AAT@lcsenlaw.com                                      *(Trustee)*
*Assigned: 03/03/2009*

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/21/2009 10:10:42 | | |
| **PACER Login:** | sal013 | **Client Code:** | |
| **Description:** | Attorney List | **Search Criteria:** | 08-85264-mhm |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

**08-85264-mhm** Glenn Royce Favre
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Margaret Murphy
**Date filed:** 12/09/2008 **Date of last filing:** 12/19/2009
**Debtor discharged:** 04/07/2009
**Date terminated:** 04/07/2009

# Creditors

**Accounting 4 Small Businesses**
1404 Cobb Branch Drive
Decatur, GA 30032

(11046455)
(cr)

**AES**
P.O. Box 2461
Harrisburg, PA 17105

(11046456)
(cr)

**American Express**
P.O. Box 297871
Fort Lauderdale, FL 33329-7871

(11046457)
(cr)

**American Express**
c/o Zwicker & Associates, PC
80 Minuteman Road
Andover, MA 01810-1031

(11046460)
(cr)

**American Express**
P.O. Box 297879
Fort Lauderdale, FL 33329-7879

(11046458)
(cr)

**American Express**
P.O. Box 297814
Fort Lauderdale, FL 33329-7814

(11046459)
(cr)

**American Express Publishing**
P.O. Box 1334
Des Plaines, IL 60017-1334

(11046461)
(cr)

**American Society of Media Photographers**
150 North Second Street
Philadelphia, PA 19106

(11046462)
(cr)

**Americas Servicing Company**
7485 New Horizon Way
Frederick, MD 21703

(11046463)
(cr)

**Atlanta Dental Group, PC**
1624 Piedmont Avenue, NE
Atlanta, GA 30324-5240

(11046464)
(cr)

**Bank of America**
P.O. Box 1390
Norfolk, VA 23501-1390

(11046465)
(cr)

**BMW Financial Services**
5550 Britton Parkway
Hilliard, OH 43026-7456

(11046466)
(cr)

**Capital One Bank (USA), NA**
P.O. Box 30285
Salt Lake City, UT 84130-0285

(11046467)
(cr)

**Chase**
800 Brooksedge Blvd.
Westerville, OH 43081

(11046468)
(cr)

**Chase**
P.O. Box 15298
Wilmington, DE 19850-5298

(11046469)
(cr)

**Citi Cards**
Box 6500
Sioux Falls, SD 57117-6500

(11046470)
(cr)

**Cox Lumber d/b/a**
HD Supply Lumber & Building Materials
c/o Mouser & Mouser, PA
1032 9th Street North
Saint Petersburg, FL 33705

(11046471)
(cr)

**Dale Capelouto**
c/o EMC Search, LLC
110 S. Columbia, #11
Decatur, GA 30030

(11046472)
(cr)

**Dekalb Emergency Physicians**
1601 Cummins Drive, Suite D-G01
Modesto, CA 95358-6403

(11046473)
(cr)

**Discover Card**
P.O. Box 30943
Salt Lake City, UT 84130

(11046474)
(cr)

**Discover Financial Services, LLC**
P. O. Box 3025
New Albany, OH 43054-3025

(12441922)
(cr)

**Extra Space Storage**
Atlanta - Virginia Ave
600 Virginia Avenue, NE
Atlanta, GA 30306

(11046475)
(cr)

**Ford Motor Credit**
P.O. Box 105697
Atlanta, GA 30348-5697

(11046476)
(cr)

**Ford Motor Credit**
National Bankruptcy Service Center
P.O. Box 537901
Livonia, MI 48153-7901

(11046477)
(cr)

**Ford Motor Credit**
P. O. Box 105697
Atlanta, GA 30348-5697

(12441923)
(cr)

**Ford Motor Credit Company LLC**
P O Box 537901
Livonia MI 48153-9905

(11118106)
(cr)

**Ford Motor Credit Company LLC**
Drawer 55-953
P O Box 55000
Detroit MI 48225-0953

(11122043)
(cr)

**GE Money Bank / Stock Building Supply**
Attn: Bankruptcy Dept.
P.O. Box 103104
Roswell, GA 30076

(11046478)
(cr)

**GEMB / Lowes**
P.O. Box 981416
El Paso, TX 79998-1416

(11046479)
(cr)

**Hoppe Collins & Ojeda, LLC**
Attorneys at Law
1827 Powers Ferry Road, SE
Building 7, Suite 350
Atlanta, GA 30339

(11046480)
(cr)

**Innovative Merchant Services**
26520 Agoura Road
Calabasas, CA 91302

(11046481)
(cr)

**John Stokes**
110 S. Columbia Drive, #11
Decatur, GA 30030

(11046482)
(cr)

**Jose Martinez**
44 Pearl Lane
Atlanta, GA 30341

(11046483)
(cr)

**Kenneth Krell**
176 Peachtree Circle

(11046484)
(cr)

Atlanta, GA 30306

**Labor Finders**
P.O. Box 1184
Forest Park, GA 30298-1184

(11046485)
(cr)

**Mouser & Mouser, P. A.**
1032 9th Street North
Saint Petersburg, FL 33705

(11046486)
(cr)

**Northwest Exterminating**
830 Kennesaw Avenue
Marietta, GA 30060

(11046487)
(cr)

**Peachtree Emergency Physicians**
P.O. Box 281114
Atlanta, GA 30384-1114

(11046488)
(cr)

**Piedmont Healthcare**
Paces West Two
Suite 1000
2727 Paces Ferry Road
Atlanta, GA 30339

(11046489)
(cr)

**Piedmont Hospitalist Physicians LLC**
P.O. Box 116984
Atlanta, GA 30368-6984

(11046490)
(cr)

**Radiology Associates of Dekalb PC**
1190 W. Druid Hills Drive, NE
#T-75
Atlanta, GA 30329-2121

(11046491)
(cr)

**Stock Building Supply**
2865 Log Cabin Drive, SE
Smyrna, GA 30080

(11046492)
(cr)

**Suntrust Mortgage, Inc.**
1001 Semmes Avenue, Suite 600
Richmond, VA 23224-2245

(11046493)
(cr)

**Wachovia Bank, N.A.**
P.O. Box 50014 VA7372
Roanoke, VA 24040-0014

(11046494)
(cr)

**Wachovia Bank, N.A.**
c/o Focus Receivables Management
1130 Northchase Parkway, Suite 150
Marietta, GA 30067

(11046495)
(cr)

**Wachovia Bank, NA**
c/o AllianceOne Receivables Management    (11046496)
7311 Quality Circle Drive    (cr)
Anderson, IN 46013

**Wachovia Card Services, NA**
Central Bankruptcy Dept.    (11046497)
VA 7359    (cr)
P.O. Box 13765
Roanoke, VA 24037

**Washington Mutual**
1215 Caroline Street    (11046498)
Suite H    (cr)
Atlanta, GA 30307

**Wells Fargo Auto Finance**
P.O. Box 29704    (11046499)
Phoenix, AZ 85038-9704    (cr)

**Wells Fargo N.A.**
Wells Fargo Auto Finace    (12441921)
13765 Technology Dr.    (cr)
Bldg. C, 2nd Floor
Eden Prairie, MN 55344-2252

**WF Financial Bank**
3201 N. 4th Avenue    (11046500)
Sioux Falls, SD 57104    (cr)

**WFNNB / Express**
P.O. Box 182125    (11046501)
Columbus, OH 43218-2125    (cr)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/21/2009 10:11:20 | | |
| **PACER Login:** | sa1013 | **Client Code:** | |
| **Description:** | Creditor List | **Search Criteria:** | 08-85264-mhm Creditor Type: cr |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

**FEDERAL
RESERVE
BANK**
*of* ATLANTA

ERIEN O. TERRY
*Director of Consumer Affairs*

1000 Peachtree Street NE
Atlanta, Georgia 30309-4470
888-342-5133, ext. 7361
Fax 404-498-7101
ConsumerQuestions@atl.frb.org

November 21, 2008

Mr. Glenn Favre
110 S. Columbia Drive, Unit 2
Decatur, Georgia  30030

Dear Mr. Favre:

This letter is in response to your complaint regarding SunTrust Mortgage, Inc., Richmond, Virginia.
In your letter you expressed your concerns with regard to your construction-permanent loan.

Please be aware that our complaint policies mandated by the Board of Governors of the Federal
Reserve System require us to carefully review every complaint we receive against one of our state
member banks.  While in some instances we can initiate a favorable resolution between the bank and
the consumer, we are not empowered to resolve or mediate contractual disputes, disputes of fact, or
to resolve cases whereby fraud has occurred.  We are also unable to negotiate or mediate financial
settlements on your behalf.  Our regulatory responsibilities are to promote the safety and soundness
of the institutions we regulate and to ensure that they comply with the federal banking consumer
protection laws and regulations that under our regulatory authority.  Outside of these responsibilities,
we do not customarily direct the manner in which our regulated institutions manage business
relationships with their customers.

We have reviewed your claims and decided that your complaint is beyond the scope of our
regulatory authority.  As we are not a judicial authority, you will need to take your case to the legal
system to seek redress.  We can only suggest that you seek legal counsel to determine your options.
We realize that this is not the response you were seeking, but we trust that it will inform you of our
position.  If you have any questions regarding the review of your complaint, please contact our
Complaints Manager, Joseph Cassar, at 888-342-5133 ext. 7361.  Please be aware that our web site
contains    brochures    of    interest    to    consumers,    which    can    be    accessed    at
www.frbatlanta.org/consumer.cfm.

Sincerely,

Erien O. Terry